[Cite as *LaSalle Bank Natl. Assn. v. Brown*, 2014-Ohio-3261.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| LASALLE BANK NATIONAL ASSOCIATION | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.    25822 |
| v. | : | T.C. NO.    08CV6242 |
| CHARLES BROWN, et al. | : | (Civil appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the 25th day of July, 2014.

. . . . . . . . . .

JASON A. WHITACRE, Atty. Reg. No. 0077330 and ASHLEY E. MUELLER, Atty. Reg. No. 0084931, 4500 Courthouse Blvd., Suite 400, Stow, Ohio 44224
         Attorneys for Plaintiff-Appellee

ANDREW M. ENGEL, Atty. Reg. No. 0047371, 7071 Corporate Way, Suite 201, Centerville, Ohio 45459
         Attorney for Defendant-Appellant Tina DiGiorgio

. . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Appellant, Tina DiGiorgio, appeals from a trial court decision overruling her motion to vacate. In the motion, DiGiorgio asked the trial court to vacate an entry confirming her purchase of real property located at 5031 Heather Way, Huber Heights, Ohio.

**{¶ 2}** DiGiorgio contends that the trial court erred in overruling the motion to vacate, because she had standing to challenge the validity of the court's prior judgment of foreclosure. DiGiorgio also contends that her challenge to the foreclosure judgment and sale were not barred by caveat emptor. Finally, DiGiorgio contends that the Plaintiff-Appellee, LaSalle Bank National Association, as Trustee for the Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset Backed Certificate, Series 2006-FF1 ("LaSalle") lacked standing to sue.

**{¶ 3}** We conclude that the trial court did not err in overruling the motion to vacate. DiGiorgio lacks standing to appeal the decision on the motion to vacate, because she failed to file a motion to intervene in the trial court pursuant to Civ.R. 24(C). Furthermore, DiGiorgio cannot collaterally attack the foreclosure judgment as a nonparty because the bank that originally filed the action had standing to sue. The bank was the owner of the note and mortgage, and was entitled to enforce the note as a nonholder in possession of the instrument. Even if DiGiorgio has standing to appeal, her claim is barred by caveat emptor, as any defects in title or in the court proceedings were of public record and could have been discovered prior to the judicial sale. Finally, assuming for purposes of argument that the bank lacked standing when the foreclosure action was initially filed, the judgment would be only voidable, not void. However, DiGiorgio did not file a motion to intervene, nor did she

file a motion to set the judgment aside under Civ.R. 60(B). Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} In July 2008, LaSalle filed the underlying action in foreclosure against Charles and Rosalie Brown ("the Browns"), and others, alleging that LaSalle was owed $156,746.51 on a promissory note that was in default. LaSalle stated that it currently could not find the note in its file. However, LaSalle did attach a copy of a mortgage for the premises at 5031 Heather Way, Huber Heights, Ohio. The mortgage was dated November 21, 2003, and granted the Lender, First Financial Corporation ("First Financial"), a security interest in the Heather Way property. The mortgage also referred to the promissory note that the Browns had signed the same day.

{¶ 5} In October 2008, the Browns filed a motion to dismiss, or in the alternative for a more definite statement, based on the fact that the note was not attached to the complaint. In response, LaSalle filed several documents, including an assignment of the note and mortgage from First Financial to LaSalle. The assignment was executed on September 21, 2008, and had been sent to the Montgomery County Recorder's Office to be recorded. LaSalle also included copies of the Browns' loan account history and a copy of the adjustable rate note that the Browns had signed.

{¶ 6} On October 31, 2008, the trial court concluded that LaSalle had fulfilled its obligations under Civ.R. 10(D), and overruled the motion to dismiss. Subsequently, in November 2008, the Browns filed an answer, a counterclaim against LaSalle for alleged

damage to the property, and a cross-claim against First Financial. In their answer, the Browns raised standing and the lack of a real party in interest as a defense. *See* Doc. #51, p. 3.

**{¶ 7}** In February 2010, LaSalle filed a motion for summary judgment. Attached to the motion was the affidavit of Michael Brandi, a loan services specialist with Home Loan Services, Inc., the duly authorized mortgage loan servicing agent for LaSalle and for the Browns' account. In the affidavit, Brandi stated, based on personal knowledge and access to the business records for the account, that, when the suit was filed, LaSalle was the owner and holder of the promissory note and corresponding mortgage executed by Charles Brown. Brandi also attached copies of the note and mortgage to his affidavit. The Browns did not respond to the motion for summary judgment, nor did they, thereafter, challenge the content of the affidavit.

**{¶ 8}** The Browns subsequently dismissed their counterclaim with prejudice on August 11, 2010. In addition, they voluntarily dismissed their cross-claim. Then, on August 23, 2010, the Browns, First Franklin, and LaSalle filed a document entitled "Consent Entry, Decree of Foreclosure and Order of Sale with Waiver of Deficiency." *See* Doc.# 93. In the Consent Entry, the parties consented to the following:

> (a) a default of obligations under promissory note ("Note") dated November 21, 2003 payable by Charles Brown; (b) foreclose the lien of Mortgage of the same date securing the Note obligations with the real estate described below (the "Property"); and (c) require that all parties set forth their claims to the Property or be barred. Doc. #93, p. 1.

**{¶ 9}** The agreed entry also stated that:

The Court finds that all necessary parties have been properly served and are before the Court. The Court finds that Plaintiff filed its Complaint against the Browns in their capacity as obligors on the Note as the Property mortgagors, and against the remaining Defendants as persons with possible interests in the Property. Upon consideration thereof, the Court finds no genuine issue as to any material fact and finds that Plaintiff is entitled to a *Judgment Entry, Decree of Foreclosure and Order of Sale*. (Emphasis sic.).

*Id.* at p. 1.

**{¶ 10}** The court, therefore, ordered that the amount owed to LaSalle under the note was $156,746.51, plus interest at a rate of 10.25% per year from June 1, 2007, and that the note was secured by the mortgage held by LaSalle. The court further found that the conditions of the mortgage were broken, and that LaSalle was entitled to have the equity of redemption foreclosed. In addition, the court stated that if the sums owed were not fully paid within three days, the equity of redemption would be foreclosed, and an order of sale to the sheriff would issue. Finally, the court ordered that after sale, and upon confirmation, the assets would be distributed, first, for payment of court costs and second, for unpaid taxes and assessments. The balance, if any, would be given to LaSalle for payment of the $156,746.51, plus interest that was owed. The Browns did not pay the amounts owed within three days, and no appeal was taken from the foreclosure order.

**{¶ 11}** Sheriff's sales were scheduled several times and were cancelled at LaSalle's request. In November 2012, the property was sold at public auction to Tina

DiGiorgio for the sum of $164,000, and a judgment entry was filed in December 2012, confirming the sale and ordering distribution. At that time, the court ordered the sheriff to convey the deed and a writ of possession to DiGiorgio, and cancelled the mortgages on the property. No appeal was taken from the order confirming the sale. A writ of restitution was then granted to DiGiorgio in January 2013.

{¶ 12} In February 2013, a motion for permission to intervene was filed by Charles and Brandi Stoll, who claimed they had been tenants at 5031 Heather Way since April 2012, pursuant to a rental agreement with Charles Brown. The Stolls attached a rental agreement, indicating that Brown had been renting the premises to them on a month-to-month basis since April 2012, for $1,000 per month. The trial court overruled the motion to intervene in February 2013.

{¶ 13} In May 2013, which was more than six months after the sheriff's sale, DiGiorgio filed a motion to vacate the entry confirming the sale. After the trial court overruled the motion to vacate, DiGiorgio appealed from the order overruling her motion.

II. Did the Trial Court Err in Denying the Motion to Vacate the Judgment?

{¶ 14} DiGiorgio's sole assignment of error states that:

The Trial Court Erred in Denying Appellant's Motion to Vacate Judgment.

{¶ 15} Under this assignment of error, DiGiorgio raises three major points. We will address each point separately.

A. Standing to Contest the Validity of the Consent Entry

{¶ 16} DiGiorgio's first argument is that she had standing to challenge the validity of the consent entry ordering foreclosure. This entry was filed in August 2010, almost three years before DiGiorgio filed the motion to vacate.

{¶ 17} The trial court concluded that DiGiorgio lacked standing because she was not a party to the action and was not a real party in interest to the foreclosure. In this regard, the trial court noted that DiGiorgio had purchased the property at a sheriff's sale, and her interest was limited to the property and possession of such, but did not extend to the foreclosure action. In contrast, DiGiorgio argues that even if she is a stranger to the action, she can collaterally attack a judgment that was entered without jurisdiction. In responding to DiGiorgio's arguments, LaSalle first contends that DiGiorgio lacks standing to appeal because she failed to file a motion to intervene in the underlying action.

{¶ 18} Civ.R. 24(C) outlines procedures to be followed by persons who wish to intervene in actions, and provides that:

A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5. The motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought.

{¶ 19} Intervention can be either as of right, pursuant to Civ.R. 24(A), or permissive, pursuant to Civ.R. 24(B). With respect to intervention as of right, Civ.R. 24(A) states that:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to

intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**{¶ 20}** We have previously held that "[f]ollowing the confirmation of a sheriff's sale, the purchaser has a vested interest in the property." *Foreclosure of Liens for Delinquent Taxes v. Parcels of Land encumbered with Delinquent Tax Liens*, 2d Dist. Clark No. 2002-CA-99, 2003-Ohio-1760, ¶ 12, citing *Ohio Sav. Bank v. Ambrose*, 56 Ohio St.3d 53, 55, 563 N.E.2d 1388 (1990). "This is so because the title to property legally passes upon confirmation of the sale." *Id.* (Citation omitted.) We have also observed that:

"Where a person is the highest bidder at a sheriff's sale, and as such is duly declared to be the purchaser, and refuses, without cause, to fulfill his contract, he may be proceeded against in the same suit, he having become a party thereto by the purchase made, and, upon due notice and hearing, the court may order a resale and order the defaulting purchaser to pay the expenses arising from his noncompletion of the purchase, and also any deficiency in price in the resale * * *, or the sale may be confirmed and the purchaser may be proceeded against by suit to recover the purchase price." *Ford Consumer Finance Co., Inc. v. Johnson*, 2d Dist. Montgomery No. 20767, 2005-Ohio-4735, ¶ 31, quoting *Barclays American/Mortg. Corp. v. Evans*, 118 Ohio App.3d 128, 691 N.E.2d 1144 (2d Dist.1997), which in turn

cited *Union Trust Co. v. Monroe*, 34 Ohio App. 47, 170 N.E. 369 (9th Dist.1930).

**{¶ 21}** The action in *Monroe* was a charge in contempt for failure to pay for the property. *Id.* at 48. If purchasers are entitled to be brought before the court for purposes of enforcing a sale, logic dictates that the same individuals would be entitled to become parties for purposes of defending their interest in the property. As a result, DiGiorgio would have been a person permitted to intervene in the action as of right under Civ.R. 24(A). However, DiGiorgio did not file a request to intervene; she merely filed a motion to vacate the sale.

**{¶ 22}** The Tenth District Court of Appeals has held that:

"To have standing to appeal, a person must either have been a party to the case or have attempted to intervene as a party." *Lopez v. Veitran*, 1st Dist. No. C-110511, 2012-Ohio-1216, ¶ 10 * * * "Merely appearing in a proceeding and presenting an argument does not make a person a party to an action with a right to appeal." *Lopez* at ¶ 10, citing *In re Adoption of T.B.S.*, 4th Dist. No. 07CA3139, 2007-Ohio-3559, ¶ 7 * * *. (Citation omitted.) *PHH Mtge. Corp. v. Therrien,* 10th Dist. Franklin No. 12AP-312, 2012-Ohio-5307, ¶ 8.

**{¶ 23}** In *Therrien*, the individual attempting to appeal was identified in the caption of the complaint as a trustee for a trust that had been named as a defendant. The trustee actually participated pro se in the action for nearly a year, and then retained an attorney, who received leave to file an answer and counterclaim on the trustee's behalf. *Id.* at ¶ 2-3. Subsequently, the trial court struck the answer and counterclaim because the

trustee was not personally a party to the foreclosure action and lacked standing to assert claims on his own behalf. *Id.* at ¶ 5. After the trial court granted summary judgment in favor of the bank that had requested foreclosure, the trustee appealed, contending among other things, that the trial court had erred in granting the motion to strike his answer and counterclaim. *Id*. at ¶ 6. As was noted, the court of appeals dismissed the appeal because the trustee did not move to intervene under Civ.R. 24, and lacked standing to appeal. *Therrien* at ¶ 8.

{¶ 24} Applying the same reasoning here would mean that DiGiorgio lacks standing to prosecute this appeal, because she failed to file a motion to intervene in the trial court. *Compare Sky Bank v. Mamone*, 182 Ohio App.3d 323, 2009-Ohio-2265, 912 N.E.2d 668 (8th Dist.), where the purchaser at a sheriff's sale filed both a motion to intervene and a motion to vacate the sheriff's sale. *Id.* at ¶ 10. While not conceding that she lacks standing, DiGiorgio notes in her reply brief that she did not need to file a motion to intervene, because a "void" judgment can be collaterally attacked even by strangers to an action.

{¶ 25} A collateral attack is " 'an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.' " *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 85 Ohio St.3d 609, 611, 710 N.E.2d 681 (1999), quoting *Kingsborough v. Tousley,* 56 Ohio St. 450, 458, 47 N.E. 541 (1897). "Collateral attacks on judgments conceivably can be mounted in either the court that issued the judgment or in a different court, as they involve any new 'proceeding' not encompassed within the proceeding in which the original judgment was entered." *Ohio Pyro, Inc. v. Ohio*

*Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 20.

**{¶ 26}** In *Ohio Pyro*, the Supreme Court of Ohio stressed that:

In our jurisprudence, there is a firm and longstanding principle that final judgments are meant to be just that – final. Therefore, subject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the primary way that a civil judgment is challenged. For these reasons, it necessarily follows that collateral or indirect attacks are disfavored and that they will succeed only in certain very limited situations. (Citations omitted.) *Ohio Pyro* at ¶ 22.

**{¶ 27}** After making these comments, the Supreme Court of Ohio went on to observe that:

This court has determined that the reasons for disfavoring collateral attacks do not apply in two principal circumstances – when the issuing court lacked jurisdiction or when the order was the product of fraud (or of conduct in the nature of fraud). See *Coe [v. Erb]*, 59 Ohio St. [259,] at 271, 52 N.E. 640 [1898] (strangers to a judgment are permitted to attack the judgment based on "fraud and want of jurisdiction"). See also *Lewis v. Reed* (1927), 117 Ohio St. 152, 159, 157 N.E. 897 (absent an invalid or void judgment or fraud in the procurement of the judgment, a valid judgment cannot be collaterally attacked). *Id.* at ¶ 23.

**{¶ 28}** According to DiGiorgio, the case before us falls within such an exception, because the trial court allegedly lacked subject-matter jurisdiction over the case under

*Federal Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, and the original consent judgment of foreclosure, therefore, was void.

**{¶ 29}**　　We generally review issues of subject-matter jurisdiction de novo, unless the jurisdictional issue involves factual disputes. *See, e.g., Yu v. Zhang*, 175 Ohio App.3d 83, 2008-Ohio-400, 885 N.E.2d 278, ¶ 16 (2d Dist.). In the case before us, the issue appears to be one solely of law.

**{¶ 30}**　　In *Schwartzwald*, a bank instituted foreclosure proceedings before receiving assignment of the note and mortgage securing the defendant's loan. *Id*. at ¶ 2. The bank received the assignment during suit, but the Supreme Court of Ohio held that a "lack of standing at the commencement of a foreclosure action requires dismissal of the complaint * * *." *Id.* at ¶ 40. The court also held that "a lack of standing at the outset of litigation cannot be cured by receipt of an assignment of the claim or by substitution of the real party in interest." *Id.* at ¶ 41.

**{¶ 31}**　　We subsequently cited *Schwartzwald* in a situation where a bank had been granted a default judgment of foreclosure. *BAC Home Loans Servicing LP v. Busby*, 2d Dist. Montgomery No. 25510, 2013-Ohio-1919, ¶ 6. In a motion filed more than two years after the default judgment, the defendants asserted that the judgment was void because the bank was not the real party in interest and lacked standing. *Id.* at ¶ 10. In discussing the standing issue, we noted the following statement in *Schwartzwald* that:

> "Standing is required to invoke the jurisdiction of the common pleas court. Pursuant to Civ.R. 82, the Rules of Civil Procedure do not extend the jurisdiction of the courts of this state, and a common pleas court cannot

substitute a real party in interest for another party if no party with standing has invoked its jurisdiction in the first instance." *Id.* at ¶ 18, quoting *Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, at ¶ 38.

**{¶ 32}** We then cited a decision from the Eleventh District Court of Appeals for the following proposition: "because standing concerns the subject matter jurisdiction of the court, standing is an issue that cannot be waived and may be raised at any time, even after judgment." *Busby* at ¶ 19, citing *BAC Home Loans Servicing, L.P. v. Meister*, 11th Dist. Lake No.2012-L-042, 2013-Ohio-873, ¶ 6. (Other citation omitted.) Based on this proposition, we noted that " 'If a trial court lacks subject matter jurisdiction to render a judgment, the order is void ab initio and may be vacated by the court's inherent power, even without the filing of a Civ.R. 60(B) motion.' " (Citations omitted.) *Id.* We ultimately decided that the default judgment was not void because the documents attached to the complaint were facially valid. *Id.* at ¶ 22. We also rejected the defendant's claims under Civ.R. 60(B). *Id.* at ¶ 23-34.

**{¶ 33}** However, neither *Schwartzwald* nor *Busby* applies to the case before us. Although the Browns' promissory note was not attached to the complaint because LaSalle could not locate it at the time of filing, the note was later located and was produced for the court. Furthermore, the uncontested affidavit that LaSalle filed states that LaSalle was the owner of the note when the complaint was filed. The affidavit also states that LaSalle's "acquisition of the Note and Mortgage" was "ratified and confirmed" by the assignments that were recorded. Plaintiff's Motion for Summary Judgment, Doc. # 84, Brandi Affidavit,

p. 3. The assignments in question were the assignment of the note and mortgage from First Franklin to National City Bank of Indiana, and the assignment of the note and mortgage from National City Bank of Indiana to LaSalle. *Id.* For something to be "ratified," it must already exist.

{¶ 34} We have previously held that *Schwartzwald* does not apply, and a party is not required to show that it owned a note at the time a foreclosure is filed, where the party has a right to enforce the note and mortgage. *Nationstar Mtge., L.L.C. v. West*, 2d Dist. Montgomery Nos. 25813, 25837, 2014-Ohio-735, ¶ 26.

{¶ 35} R.C. 1303.31(A) includes the following as persons who are entitled to enforce a negotiable instrument:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder;

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code.

{¶ 36} Thus a person need not be a "holder" of the instrument in order to be entitled to enforce it. Instead, a person can be a nonholder in possession of the instrument who has the rights of a holder. This status can be bestowed in various ways. As was noted in the case of *In re Veal*, 450 B.R. 897 (Bankr.9th Dist.Ariz. 2011):

Non-UCC law can bestow this type of status; such law may, for example, recognize various classes of successors in interest such as subrogees

or administrators of decedent's estates. See Comment to UCC § 3–301. More commonly, however, a person becomes a nonholder in possession if the physical delivery of the note to that person constitutes a "transfer" but not a "negotiation." Compare UCC § 3-201 (definition of negotiation) with UCC § 3-203(a) (definition of transfer). Under the UCC, a "transfer" of a negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument." UCC § 3–203(b). As a result, if a holder transfers the note to another person by a process not involving an Article 3 negotiation – such as a sale of notes in bulk without individual indorsement of each note – that other person (the transferee) obtains from the holder the right to enforce the note even if no negotiation takes place and, thus, the transferee does not become an Article 3 "holder." See Comment 1 to UCC § 3-203. *Id.* at 911.

{¶ 37} A similar situation occurred in *Fifth Third Mtge. Co. v. Bell*, 12th Dist. Madison No. CA2013-02-003, 2013-Ohio-3678. In that case, the court of appeals concluded that the plaintiff had established its interest in a note for purposes of standing. Specifically, the court noted that:

An instrument is transferred when it is delivered by a person, other than the issuer, for the purpose of giving the person receiving the delivery the right to enforce. R.C. 1303.22(A). If the transferee is not a holder because the transferor did not endorse, the transferee is nevertheless a person entitled to enforce the instrument if the transferor was a holder at the time of transfer.

R.C. 1303.22(B); R.C. 1303.22 cmt. 2.

FTMC's [the bank's] allegations that it was in possession of a note and entitled to enforce it, combined with the copy of the unendorsed note, at the very minimum, demonstrated that FTMC was entitled to enforce as a nonholder in possession. See R.C. 1303 .22(B); *Deutsche Bank Natl. Trust Co. v. Gardner*, 8th Dist. Cuyahoga No. 92916, 2010-Ohio-663, ¶ 18-22. The note attached to the complaint was payable to State Savings Bank. Therefore, State Savings Bank was the initial holder because the note was payable to it as an identified person. R.C. 1303.25(A). The fact that FTMC was in possession of the unendorsed note along with language used in the mortgage and the assignment of the mortgage showed a chain of custody and indicated that State Savings Bank or some other person transferred the note to FTMC with the intent that FTMC be entitled to enforce the note. Bell [the defendant mortgagor] never challenged FTMC's possession of this unendorsed note. Based on these facts, FTMC had an interest in the note as a nonholder in possession.

FTMC's status as a nonholder in possession established its interest in the note for the purposes of standing. (Footnote omitted.) *Bell* at ¶ 20-22.

**{¶ 38}** In the case before us, LaSalle attached the mortgage to the complaint and indicated that it was currently unable to locate the note. This did not mean that LaSalle lacked proper possession of the note for purposes of initiating a lawsuit; it simply meant that LaSalle had misplaced the note. In addition, the mortgage that LaSalle did attach

specifically referred to the note.

{¶ 39}    LaSalle later located the note and produced it for the court.  LaSalle also filed evidence that it owned the note at the time suit was filed, and that the assignments of the note and mortgage ratified and confirmed LaSalle's prior acquisition of the note. Furthermore, the Browns agreed in the consent entry to the foreclosure and LaSalle's entitlement to judgment on the note and mortgage.  Under the circumstances, LaSalle established that it had standing as a nonholder in possession of the note.

{¶ 40}    Accordingly, *Schwartzwald* and *Busby* do not apply, and there is no basis for concluding that the judgment was "void" and subject to collateral attack.

## B.   Caveat Emptor

{¶ 41}    DiGiorgio's second argument relates to the trial court's conclusion that even if DiGiorgio had standing, she assumed the risk of a problem with the title and must complete the sale.  According to DiGiorgio, if an underlying judgment is void, any execution issuing from the judgment is also void.

{¶ 42}    Because we have previously concluded that the underlying judgment of foreclosure was not void, the execution issuing from the judgment was not void and cannot be set aside, other than through properly recognized methods.  However, even if this were otherwise, we agree with the trial court that DiGiorgio is precluded from recovery because she could have discovered any alleged defects if she had examined the public records prior to sale.  We note that the "defect" raised by DiGiorgio was that the judgment was void under *Schwartzwald.*   See Motion to Vacate, Doc. #144, p. 2.

**{¶ 43}** "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." (Citation omitted.) *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus.

**{¶ 44}** "Under the first part of the doctrine of caveat emptor, buyers are responsible for the discovery of patent defects that are observable and discoverable by an ordinarily prudent purchaser upon reasonable inspection." *Northpoint Properties v. Charter One Bank*, 8th Dist. Cuyahoga No. 94020, 2011-Ohio-2512, ¶ 53, citing *Tipton v. Nuzum*, 84 Ohio App.3d 33, 38, 616 N.E.2d 265 (9th Dist.1992). " ' "A purchaser of real estate has the duty to use diligence in inspecting the property before buying it. The principle of caveat emptor applies to sales of real estate relative to conditions open to observation where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor." ' " *Id.*, quoting *Johnston v. Faith Baptist Church, Inc.,* 3d Dist. Allen No. 1-87-14, 1989 WL 43017 (Apr. 26, 1989). (Other citation omitted.)

**{¶ 45}** Although this doctrine is typically applied to physical conditions of a property, courts have also held that a party has no right to rely on alleged oral misrepresentations regarding the status of a property's title, where the title to the property is of public record. *See Finomore v. Epstein,* 18 Ohio App.3d 88, 91, 481 N.E.2d 1193 (8th Dist.1984) (holding that "[s]ince all of the adversities regarding title to the properties were

of public record and therefore easily discoverable, appellee had no right to rely upon any alleged oral misrepresentations").

{¶ 46} The Supreme Court of Ohio has also held that "[t]he rule of caveat emptor, applicable to judicial sales, does not charge a purchaser at such sale with knowledge of the existence of an instrument conveying the real estate, or a part thereof, where the instrument has not been recorded or filed for record in the office of the recorder, and where the holder of the same has taken no step to put one on notice of its existence." *Weir v. Snider Saw Mill Co.*, 88 Ohio St. 424, 103 N.E. 133 (1913), paragraph two of the syllabus.

{¶ 47} Thus, under this doctrine, a purchaser of real estate at a judicial sale will be charged with knowledge of an alleged defect in title where the conditions are of public record and are easily discoverable by the purchaser. In the case before us, any defects in title or in the court proceedings were of public record and could have been discovered by DiGiorgio prior to the judicial sale. Accordingly, we find no merit in DiGiorgio's second argument.

### C.  Standing Under *Schwartzwald*

{¶ 48} DiGiorgio's final argument is that the facts of the case before us are very similar to those in *Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, and that, as a result, LaSalle lacked standing to sue. In response, LaSalle contends that the judgment entry in the case below was procured by consent, and that any error has been waived.

{¶ 49} In view of our prior discussion, DiGiorgio's argument is without merit. We

have already concluded that *Schwartzwald* does not apply to the case before us. However, even if *Schwartzwald* did apply, we do not agree that the trial court lacked jurisdiction over the action.

{¶ 50} As an initial matter, we note that our jurisdictional comments in *Busby* were dicta, because they were not necessary to the decision. In *Busby*, the documents attached to the complaint were facially valid and were sufficient to establish standing. *Busby*, 2d Dist. Montgomery No. 25510, 2013-Ohio-1919, at ¶ 21-22. As a result, there would have been no basis for concluding that the trial court lacked jurisdiction, whether the judgment were void or merely voidable.

{¶ 51} We made similar remarks about jurisdiction in *PNC Bank, N.A. v. Weaver*, 2d Dist. Montgomery No. 25627, 2013-Ohio-2765, ¶ 17, and in *CitiMortgage, Inc. v. Draper*, 2d Dist. Clark No. 2012 CA 78, 2013-Ohio-2927, ¶ 13-14. Again, however, our comments in these cases were dicta, because they were not necessary to the decisions. In *Weaver*, we noted that the defendants were not challenging the bank's standing. Instead, they cited "to *Schwartzwald* to emphasize that financial institutions should be held 'to the same standards as everyone else in seeking judgments.' " *Weaver* at ¶ 18. Similarly, in *Draper*, the defendants "did not claim that CitiMortgage did not hold the note and mortgage, that they did not default on the note, and that they did not owe the amount claimed by CitiMortgage." *Draper* at ¶ 22.

{¶ 52} Furthermore, *Busby* was issued without the benefit of *Countrywide Home Loans Servicing v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565, which was decided a few weeks after *Busby* was issued. In *Nichpor*, a bank obtained a default

judgment against the borrowers, and sold the property to a third party at a sheriff's sale. *Id.* at ¶ 2. The bank then filed a notice of voluntary dismissal under Civ.R. 41(A), and the trial court dismissed the matter, declaring all pending motions moot. *Id.* Subsequently, the bank refiled the action and received a grant of summary judgment, which the borrowers appealed.

{¶ 53} On appeal, the Supreme Court stressed that " '[r]egardless of whatever else may be said of a default judgment, it is a judgment. It is as good as any other judgment. *It is a final determination of the rights of the parties*.' " (Emphasis sic.) *Id.* at ¶ 5, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 149-150, 351 N.E.2d 113 (1976). This is similar to the statement made about consent judgments in *Ohio Pyro,* which indicated that a consent judgment is " 'as effective as if the merits had been litigated' and is 'just as enforceable as any other validly entered judgment * * *.' " *Ohio Pryo,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, at ¶ 24, quoting *Gilbraith v. Hixson,* 32 Ohio St.3d 127, 129, 512 N.E.2d 956 (1987).

{¶ 54} In *Nichpor*, the Supreme Court of Ohio stated as follows:

That this default judgment occurred within a foreclosure proceeding does not make the judgment any less final. All that remained in this case were administrative matters finalizing the result of the sheriff's sale and giving the mortgagors the opportunity to exercise their equitable right of redemption. These actions can be classified as proceedings to aid in execution of the judgment.

* * *

To * * * grant a lender the right to dismiss an action after a trial court

has issued what it has indicated was a final judgment would lead to the

untenable result that an unhappy lender could simply wait until after the

sheriff's sale has occurred, decide that the sale price was too low, and then

dismiss the case in order to get a second bite at the apple. This flies in the

face of the general policy that judicial sales have a certain degree of finality.

*Nichpor* at ¶ 6-7, citing *Ambrose*, 56 Ohio St.3d at 55, 563 N.E.2d 1388.

**{¶ 55}** The same reasoning applies to buyers at judicial sales, who may become

dissatisfied with their purchase and attempt to set the sale aside, based on the alleged

"voidness" of a judgment rendered against other parties. Such an outcome is particularly

troubling in situations like the present, where the parties, including the defaulting borrowers,

agreed to the judgment of foreclosure and order of sale.

**{¶ 56}** In *Nichpor*, the Supreme Court of Ohio went on to hold that:

[A]fter a judgment entry grants a decree of foreclosure and order of sale, the

foreclosure action cannot be dismissed pursuant to Civ.R. 41(A)(1)(a),

*because that rule pertains only to the voluntary dismissal of a pending case.*

(Emphasis added.) *Id.* at ¶ 8.

**{¶ 57}** The clear implication is that a case is no longer pending after the

foreclosure judgment. We also note that in addition to *Schwartzwald*, *Busby* relied on the

Eleventh District Court of Appeals' decision in *Meister*, 11th Dist. Lake No.2012-L-042,

2013-Ohio-873. *Meister*, in turn, relied on the Eleventh District's prior decision in *Fed.

Home Loan Mtge. Corp. v. Rufo*, 86 Ohio App.3d 42, 2012-Ohio-5930, 983 N.E.2d 406

(11th Dist.). *Meister* at ¶ 9. However, the Eleventh District Court of Appeals has changed

course and no longer takes the position expressed in *Meister* and *Rufo*.

**{¶ 58}** Specifically, the Eleventh District Court of Appeals has subsequently overruled *Rufo's* holding on the jurisdictional issue. *See HSBC Bank USA, Natl. Assn. v. Bailey*, 11th Dist. Trumbull No. 2012-T-0086, 2014-Ohio-246, ¶ 29. In this regard, *Bailey* cited the court's recent decision in *CitiMortgage, Inc. v. Oates*, 11th Dist. Trumbull No.2013-T0011, 2013-Ohio-5077, ¶ 19, which had held that it is " 'incorrect to equate standing with subject matter jurisdiction.' " *Bailey* at ¶ 29.

**{¶ 59}** In *Bailey*, the Eleventh District Court of Appeals also extensively discussed the fact that a lack of standing does not equate with a court's lack of subject-matter jurisdiction. The parties in *Bailey* had entered into a consent judgment of foreclosure in a situation where the bank did not have an assignment of the note and mortgage when it filed suit. *Id.* at ¶ 2, 4, and 15. This is similar to the situation before us, with the exception that LaSalle owned the note and had standing as a party entitled to enforce the note.

**{¶ 60}** About a year and a half after the consent judgment, one of the parties in *Bailey* filed a motion for relief from judgment, but the motion was denied. *Id.* at ¶ 7 and 9. On appeal, the Eleventh District Court of Appeals held that the Civ.R. 60(B) motion was untimely. *Id.* at ¶ 19. However, the appellate court also rejected the argument that the bank's lack of standing rendered the agreed entry void ab initio, which would have allowed the trial court to vacate the judgment under its inherent powers. *Id.* at ¶ 20-21.

**{¶ 61}** In rejecting this argument, the appellate court first relied on the decision of the Supreme Court of Ohio in *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, which had "recognized 'a distinction between a court that lacks subject-matter

jurisdiction over a case and a court that improperly exercises that subject-matter jurisdiction once conferred upon it.' " *Id.* at ¶ 22, quoting *Pratts* at ¶ 10.

**{¶ 62}** In *Pratts*, the Supreme Court of Ohio stated that:

"Jurisdiction" means "the courts' statutory or constitutional power to adjudicate the case." (Emphasis omitted.) *Steel Co. v. Citizens for a Better Environment* (1998), 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210; *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 87, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. The term encompasses jurisdiction over the subject matter and over the person. *State v. Parker*, 95 Ohio St.3d 524, 2002–Ohio–2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting). Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time. *United States v. Cotton* (2002), 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860; *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002. It is a "condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void." *Id.*; *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus.

The term "jurisdiction" is also used when referring to a court's exercise of its jurisdiction over a particular case. See *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 20 (Cook, J., dissenting); *State v. Swiger* (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d

1033. " 'The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' " *Parker* at ¶ 22 (Cook, J., dissenting), quoting *Swiger*, 125 Ohio App.3d at 462, 708 N.E.2d 1033. "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, '* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' " *State ex rel. Pizza v. Rayford* (1992), 62 Ohio St.3d 382, 384, 582 N.E.2d 992, quoting *Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494, 499. *Pratts,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992*,* at ¶ 11-12.

**{¶ 63}** After quoting from *Pratts*, the Eleventh District Court of Appeals noted in *Bailey* that:

In *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, the Ohio Supreme Court held that "standing to sue is required to invoke the jurisdiction of the common pleas court," *id*. at ¶ 24, 979 N.E.2d 1214, but it did not state that the common pleas court lacked subject-matter jurisdiction where a party lacked standing to sue. The fact that HSBC Bank improperly invoked that jurisdiction by lacking the requisite standing to initiate the foreclosure action, i.e., it was not

assigned the note and mortgage prior to the filing of the complaint, merely rendered the lower court's judgment voidable, not void ab initio. *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999) ("[w]here it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present[;][a]ny subsequent error in the proceedings is only error in the 'exercise of jurisdiction,' as distinguished from the want of jurisdiction in the first instance") (citation omitted). *Bailey*, 11th Dist. Trumbull No. 2012-T-0086, 2014-Ohio-246, at ¶ 25.

**{¶ 64}** In this regard, the Eleventh District also relied on a prior decision of the Tenth District Court of Appeals, which had "explained the distinction by analyzing a party's lack of standing to initiate a lawsuit in the context of a case's justiciability." *Id.* at ¶ 26, citing *Deutsche Bank Natl. Trust Co. v. Finney*, 10th Dist. Franklin Nos. 13AP-198 and 13AP-373, 2013-Ohio-4884. In *Finney*, the Tenth District Court of Appeals noted that "[j]usticiability does not confer subject-matter jurisdiction." *Id.* at ¶ 23. When explaining this point, the Tenth District Court of Appeals reasoned that:

Rather, we recognize that subject-matter jurisdiction is not dependent upon the justiciability of any particular case. The fact that a case is justiciable does not necessarily mean that a particular court has subject-matter jurisdiction over it, e.g, a case brought in a municipal court in Ohio that exceeds the monetary jurisdiction limits set by statute or a case brought in the Court of Claims that does not name the State of Ohio as a defendant.

Similarly, a court may have jurisdiction over the subject-matter of a case and yet not be empowered to adjudicate it to final judgment for reasons particular to that case, including the lack of standing of the plaintiff. Where an action is brought by a plaintiff who lacks standing, the action is not justiciable because it fails to present a case or controversy between the parties before it. See *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 843 N.E.2d 838, 2005-Ohio-6500, ¶ 19 (10th Dist.) (" 'For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties.' " (Citations omitted.)). But the court's lack of "jurisdiction," i.e., its ability to properly resolve a particular action due to the lack of a real case or controversy between the parties, does not mean that the court lacked subject-matter jurisdiction over the case. *Finney* at ¶ 24.

{¶ 65} The Tenth District Court of Appeals thus held that while the trial court had inherent authority to vacate void judgments, the court had correctly refused to exercise this authority, because the judgment was not void. *Id.* at ¶ 26.

{¶ 66} In addition to relying on the Tenth District's analysis in *Finney,* the Eleventh District Court of Appeals relied on *Nichpor,* which was decided after *Schwartzwald.* In this regard, the Eleventh District Court of Appeals stated that:

On the issue of raising a challenge to a party's standing, the court in *Schwartzwald* stated that "the issue of standing, inasmuch as it is jurisdictional in nature, may be raised at any time during the pendency of the

proceedings." (Citation omitted.) *Schwartzwald* at ¶ 22, 979 N.E.2d 1214. The key words are "during the pendency of the proceedings." The Supreme Court has emphasized that, after a judgment entry grants a decree of foreclosure and order of sale, the case is no longer pending. *Countrywide Home Loans Servicing, L.P. v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565, syllabus. Once the decree of foreclosure becomes final, all that remains in the case are "administrative matters finalizing the result of the sheriff's sale and giving the mortgagors the opportunity to exercise their equitable right of redemption[,] * * * actions * * * classified as proceedings to aid in execution of the judgment." *Bailey*, 11th Dist. Trumbull No. 2012-T-0086, 2014-Ohio-246, at ¶ 28, quoting *Nichpor* at ¶ 6.

**{¶ 67}** Accordingly, the Eleventh District Court of Appeals concluded that the underlying case was no longer pending and that in order to challenge the judgment, the party seeking relief would have to satisfy the timeliness requirements in Civ.R. 60(B). *Id.* at ¶ 30. This is consistent with the approach used in *Mamone*, 182 Ohio App.3d 323, 2009-Ohio-2265, 912 N.E.2d 668. In *Mamone*, the Tenth District Court of Appeals held that because foreclosure orders and orders of confirmation are final appealable orders:

An order of confirmation thus becomes "dispositive as to the propriety of the sale and the sale confirmation procedures unless properly vacated by the trial court pursuant to Civ.R. 60(B)." (Emphasis added.) *Triple F Invests*. [*v. Pacific Fin. Servs*., Inc. 11th Dist, Portage App. No. 2000-P-0090, 2001 WL 589343 (June 2, 2001)], supra. This court too has

determined that a trial court may review an order confirming a sheriff's sale only if its jurisdiction is invoked by means of Civ.R. 60(B). *Rokakis v. Snipes* (Mar. 4, 1999), Cuyahoga App. No. 73938, 1999 WL 126943. *Mamone* at ¶ 26.

**{¶ 68}** The logic used in these cases is persuasive. Under the decisions in *Pratts*, *Schwartzwald*, and *Nichpor*, the consent judgment that was filed in 2010 became final when no party appealed from the judgment, and the case was no longer pending. Thus, the issue of standing could no longer be raised, except in a Civ.R. 60(B) motion, which was not filed. Even if LaSalle lacked standing at the time the action was filed, the trial court's inability to properly resolve the particular action before it, due to a lack of a real case or controversy between the parties, rendered the judgment voidable, rather than void, and the judgment could not be set aside on the basis of a collateral attack by a non-party. It could only be attacked by a properly filed Civ.R. 60(B) motion. In this regard, we stress that in addition to its decision in *Nichpor*, the Supreme Court of Ohio, after *Schwartzwald*, has continued to characterize standing as involving a lack of capacity, rather than a lack of subject-matter jurisdiction.

**{¶ 69}** For example, in *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 137 Ohio St.3d 266, 2013-Ohio-4627, 998 N.E.2d 1132, the Supreme Court of Ohio made the following observations:

> The BOE argues that the issue of the trust's standing is separate and distinct from the BOR's subject-matter jurisdiction and that standing is not at issue here because the BTA addressed only subject-matter jurisdiction.

Subject-matter jurisdiction refers to the statutory or constitutional authority to adjudicate a case. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. *Lack of standing, on the other hand, challenges a party's capacity to bring an action, not the subject-matter jurisdiction of the tribunal. State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). (Emphasis added.) *Groveport Madison* at ¶ 25.

**{¶ 70}** Although the Supreme Court of Ohio went on to note that the legislature had "incorporated the requirement for standing into the jurisdictional requirements for filing a valuation complaint," *id.*, this observation has no bearing on the situation before us. The important point is that the court, after *Schwartzwald*, has employed the approach to standing and jurisdiction that the Tenth and Eleventh Districts have adopted.

**{¶ 71}** In *Finney*, the Tenth District Court of Appeals noted that the Supreme Court of Ohio had certified a conflict between the Tenth District's prior decision in *PNC Bank, N.A. v. Botts*, 10th Dist. Franklin No. 12AP-256, 2012-Ohio-5383, and the decision of the Ninth District Court of Appeals in *Bank of America, N.A. v. Kuchta*, 9th Dist. Medina No. 12CA-25-M, 2012-Ohio-5562 *Finney*, 10th Dist. Franklin Nos. 13AP-198 and 13AP-373, 2013-Ohio-4884, at ¶ 7-8 and 25. Perhaps at some point, the Supreme Court of Ohio will clarify its preferred approach on jurisdiction and standing.

**{¶ 72}** Accordingly, even if LaSalle lacked standing to bring suit when it filed the complaint, any lack of standing would have rendered the judgment voidable rather than void, and would not have permitted collateral attack. Furthermore, the proper avenue in this situation would have been to file a motion to intervene, followed by a Civ.R. 60(B)

motion, which was not done.

**{¶ 73}** Based on the preceding discussion, DiGiorgio's sole assignment of error is overruled.

### III. Conclusion

**{¶ 74}** DiGiorgio's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., dissenting:

**{¶ 75}** I disagree. In my view, conspicuously absent is any documentation, assignment, merger or otherwise, supporting Plaintiff's status as a real party in interest. LaSalle conceded: "Plaintiff's Assignment of Mortgage may not have been executed and sent for recording until several months after the Complaint was filed."

**{¶ 76}** DiGiorgio asserted that after the sale of the property was confirmed, she "learned that the title to the property is completely unmarketable and uninsurable because of jurisdictional defects in the proceedings. Specifically, because it appears from the record of this case that [LaSalle] did not possess any interest in either the promissory note or the mortgage," pursuant to *Schwartzwald*. DiGiorgio, in my view, correctly asserted that LaSalle "lacked standing and therefore failed to invoke the jurisdiction of this court. Thus all resulting orders in this case are void." In other words, this case was never commenced, no judgment was ever entered, and the sale of the property failed to terminate any of the

defendants' rights in the property.   DiGiorgio averred that she has not been able to complete the financing to finalize the purchase.   Apparently, the lender's title insurer will not issue a title insurance policy.

{¶ 77}   Furthermore, DiGiorgio, in my view, has standing to contest the validity of the Consent Entry.   She acknowledges that, while collateral attacks on judgments are strongly disfavored, "it has long been recognized that a judgment may always be attacked if it was issued by a court without jurisdiction," in reliance upon *Ohio Pyro, Inc.*, and *Coe v. Erb*. In *Ohio Pyro*, the Ohio Supreme Court defined a collateral attack on a judgment as "'an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.'" *Id.*, ¶ 16. (Citations omitted).   The *Ohio Pyro* Court further noted that a collateral attack is "'an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective. * * * .'" *Id.*, ¶ 17, quoting Black's Law Dictionary 278 (8th Ed. 2004).

{¶ 78}   In *Ohio Pyro*, Safety 4th Fireworks Inc, Ohio Pyro's competitor, sued the Fire Marshal in the Jefferson County Court of Common Pleas, in 1999, regarding a moratorium on requests for the issuance of wholesaler licenses, in an attempt to relocate into a county where Ohio Pyro operated a fireworks wholesale company. *Id.* ¶ 3.   Ohio Pyro attempted to intervene in the suit, and the trial court denied the motion to intervene. *Id.*, ¶ 5. "Safety 4th and the Fire Marshall reached an agreement to settle the litigation.   On June 6, 2001, the Jefferson County Court of Common Pleas journalized an agreed order submitted by the parties 'as a full and final settlement of any and all claims.'"   *Id.*, ¶ 6.   In 2004, Ohio

Pyro filed a complaint for declaratory judgment and injunctive relief in the Fayette County Court of Common Pleas, alleging that it learned that Safety 4th was relocating to Fayette County. *Id*., ¶ 9. The court granted Ohio's Pyro's request for a preliminary injunction, and in a motion to dismiss, the Fire Marshall and Safety 4th argued that Ohio Pyro's suit was an "impermissible collateral attack" on the judgment issued by the Jefferson County Court of Common Pleas. *Id*., ¶ 12. Ohio Pyro filed a motion for summary judgment, which was granted, and the decision was affirmed on appeal. *Id.*, ¶ 13 - 14.

{¶ 79} After noting, based upon *Coe*, that "strangers to a judgment are permitted to attack the judgment based upon 'fraud and want of jurisdiction,'" the Ohio Supreme Court determined that Ohio Pyro's action in Fayette County was not based upon fraud or lack of jurisdiction and, "unless other qualifying considerations are present, if this action is indeed a collateral attack" on the 2001 judgment, it is improper, and "the trial court should have granted the motions to dismiss of the Fire Marshall and Safety First." *Id*., ¶ 23. The Court further determined that although the 2001 judgment was issued pursuant to the parties' agreement, it was "entitled to the presumption of finality that the doctrine disfavoring collateral attacks affords to a valid judgment." *Id*., ¶ 24.

{¶ 80} In *Coe*, D.S. Erb sued "one Hendrickson and others, including the plaintiff in error, Irvin T.Coe." *Id*., 259. Erb recovered a judgment against Hendrickson, which was not journalized but subsequently entered nunc pro tunc, after Hendrickson conveyed real property to Coe. *Id*. At issue was whether the judgment in favor of Erb created a lien on the property of Coe, who purchased the property from Hendrickson before the judgment was journalized, without knowledge thereof. *Id*., 261. The Supreme Court of Ohio

determined: "It has appeared by the authorities cited that two principal grounds on which collateral attack by strangers has been permitted are fraud and want of jurisdiction." *Id.,* 271. The court concluded as follows:

> * * * [I]n order to create a lien as of the first day of the term, there must be an entry of judgment on the journal during the term; that the entry made in this case after the term was unauthorized, and worked a fraud upon the plaintiff in error; that the judgment, as it appears of record, does not conclude his rights; and that, not being a privy as respects the action then pending, he could not maintain a direct action to review the judgment, and therefore has the right to challenge its effect on his property in the case at bar.
>
> *Id*., 277.

**{¶ 81}** DiGiorgio further correctly relies upon jurisprudence in which this Court "has previously recognized that once a judicial sale is confirmed, the purchaser has a vested interest in the case and has standing to appeal," in reliance upon *Abroms v. Synergy Building Systems*, 2d Dist. Montgomery No. 23944, 2011-Ohio-2180. Therein, Hillard and Janet Abroms sued the seller of real property, Synergy Development Ltd., and its vice president, Barnett, due to a mold infestation. *Id*., ¶ 11. The trial court dismissed the breach of contract claims and granted summary judgment to Synergy and Barnett on February 22, 2010. *Id*., ¶ 17. This Court noted that the Abromses' complaint was filed on January 10, 2008, after a foreclosure action was initiated in May 2007, concerning the building, and after a sheriff's sale occurred in December 2007. *Id.*, ¶ 47. The building was bought by Park National Bank. *Id*. The court in the foreclosure case confirmed the sale subsequent to the filing of

the Abromses' complaint.  *Id*., ¶ 48.

{¶ 82}  At issue on appeal was "whether the trial court erred in finding there was no genuine issue of material fact that the Abromses did not have standing on February 22, 2010; that is, did they still have a personal stake in the outcome of the litigation."  *Id*., ¶ 54. This Court determined that the Abromses owned the property at the time their complaint was filed, "with a statutory right to redemption", since the sale of the property had not been confirmed, and since the buyer of foreclosed property "has no vested right in the property until the sale is confirmed."  In other words, "the Abromses had standing on January 10, 2008, to file an action for damages to the property."  *Id*., ¶ 52-53.

{¶ 83}  In my view, DiGiorgio did not assume "the risk of a problem with the title" such that she must complete the sale.  She argues that the underlying judgment is void and that "any execution issuing from the judgment is also void," in reliance upon *The Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 133 N.E.2d 606 (1956).  Therein, the Snaders, who resided in New Mexico, filed a motion to vacate a default judgment terminating their lease. *Id*. at 62.  The property was subsequently sold at sheriff's sale.  *Id*. The Snaders sought to have title quieted in them "on the ground that such judgment is invalid for the reason that the affidavits for service by publication are false and that the service was never completed." *Id*.  The trial court in relevant part refused to vacate the sale of the property, concluding that "said judgment and sale of the said real estate is not void but voidable."  *Id*. at 63.  The Snaders appealed, and the appellate court dismissed the appeal for lack of a final order.  *Id.* The Ohio Supreme Court determined at syllabus that "a judgment rendered upon such faulty service is void *ab initio*," and "a sale of real property pursuant to such judgment is invalid

and will be set aside even though such property is in the hands of a third person who is a purchaser in good faith." In my view, the doctrine of *caveat emptor* does not apply to Digiorgio's purchase of the property since, as in *Snader* (albeit, therein, based upon faulty service), the sale itself was invalid.

{¶ 84} DiGiorgio is correct that the matter herein is analogous to *Schwartzwald.* After noting that the plaintiff filed suit prior to obtaining an assignment of the note and mortgage securing the Schwartzwalds' loan, the Supreme Court determined as follows:

The Ohio Constitution provides in Article IV, Section 4(B): "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." (Emphasis added.)

In *Cleveland v. Shaker Hts.*, 30 Ohio St.3d 49, 51, 507 N.E.2d 323 (1987), we stated:

" 'Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a "personal stake in the outcome of the controversy." ' "

\* \* \*

We recognized that standing is a "jurisdictional requirement" in *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179, 298 N.E.2d 515 (1973), and we stated: "It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." (Emphasis added.) *See also New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 218, 513 N.E.2d 302 (1987) ("the issue of standing, inasmuch as it is jurisdictional in nature, may be raised at any time during the pendency of the proceedings."); Steinglass & Scarselli, *The Ohio State Constitution: A Reference Guide* 180 (2004) (noting that the jurisdiction of the common pleas court is limited to justiciable matters).

And recently, in *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, we affirmed the dismissal of a complaint for lack of standing when it had been filed before the claimant had suffered any injury. There, Kincaid asserted claims that his insurer had breached the insurance contract by failing to pay expenses covered by the policy; however, he had never presented a claim for reimbursement to the insurer. We concluded that Kincaid lacked standing to assert the cause of action, explaining, "Until Erie refuses to pay a claim for a loss, Kincaid has suffered no actual damages for breach of contract, the parties do not have adverse legal interests, and there is no justiciable controversy." *Id*. at ¶ 13.

Because standing to sue is required to invoke the jurisdiction of the common pleas court, "standing is to be determined as of the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-"571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), fn. 5; * * *.

Further, invoking the jurisdiction of the court "depends on the state of things at the time of the action brought," *Mullan v. Torrance*, 22 U.S. 537, 539, 9 Wheat. 537, 6 L.Ed. 154 (1824), and the Supreme Court has observed that "[t]he state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction." *Rockwell Internatl. Corp. v. United States*, 549 U.S. 457, 473, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007).

Thus, "[p]ost-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress." 13A Wright, Miller & Cooper, *Federal Practice and Procedure 9*, Section 3531 (2008); * * *.

This principle accords with decisions from other states holding that standing is determined as of the filing of the complaint. *See, e.g., Deutsche Bank Natl. Trust v. Brumbaugh*, 2012 OK 3, 270 P.3d 151, ¶ 11 ("If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder *after the foreclosure action was filed*, then the case may be dismissed without prejudice * * *"

[emphasis added] ); *U.S. Bank Natl. Assn. v. Kimball*, 190 Vt. 210, 2011 VT 81, 27 A.3d 1087, ¶ 14 ("U.S. Bank was required to show that *at the time the complaint was filed* it possessed the original note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to U.S. Bank" [emphasis added] ); *Mtge. Electronic Registration Sys., Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289, ¶ 15 ("Without possession of or any interest in the note, MERS *lacked standing to institute* foreclosure proceedings and could not invoke the jurisdiction of our trial courts" [emphasis added] ); *RMS Residential Properties, L.L.C. v. Miller*, 303 Conn. 224, 229, 232, 32 A.3d 307 (2011), quoting *Hiland v. Ives*, 28 Conn.Supp. 243, 245, 257 A.2d 822 (1966) (explaining that "'[s]tanding is the legal right to set judicial machinery in motion'" and holding that the plaintiff had standing because it proved ownership of the note and mortgage at the time it commenced foreclosure action); *McLean v. JP Morgan Chase Bank Natl. Assn.*, 79 So.3d 170, 173 (Fla.App.2012) ("the plaintiff must prove that it had standing to foreclose when the complaint was filed"); see also *Burley v. Douglas*, 26 So.3d 1013, 1019 (Miss.2009), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), fn. 5 ("'standing is to be determined as of the commencement of suit'"); *In re 2007 Administration of Appropriations of Waters of the Niobrara*, 278 Neb. 137, 145, 768 N.W.2d 420 (2009) ("only a party that has standing may invoke the jurisdiction of a court or tribunal. And the junior

appropriators did not lose standing if they possessed it under the facts existing when they commenced the litigation" [footnote omitted] ).

Here, Federal Home Loan concedes that there is no evidence that it had suffered any injury at the time it commenced this foreclosure action. Thus, because it failed to establish an interest in the note or mortgage at the time it filed suit, it had no standing to invoke the jurisdiction of the common pleas court. *Id*., ¶ 20-28.

The *Schwartzwald* Court concluded that the "lack of standing at the commencement of a foreclosure action requires dismissal of the complaint; however, that dismissal is not an adjudication on the merits and therefore is without prejudice. * * * ." *Id*., ¶ 40.

**{¶ 85}** LaSalle erroneously suggests that "Civ.R. 24(C) sets forth a mandatory procedure for a party seeking intervention," and that DiGiorgio failed to comply with the rule. LaSalle directs our attention to *State ex rel. Jones v. Wilson*, 48 Ohio St.2d 349, 358 N.E.2d 605 (1976). Therein, the State sought a writ of mandamus in the court of appeals to order the trial court to re-sentence Phillip Gardner. *Id*., 349. After the writ was granted, Gardner appealed, and his appeal was dismissed since "Gardner, not being a party to the cause in the Court of Appeals and not having attempted to intervene as a party in that court, is without capacity to appeal." *Id*. In my view, DiGiorgio did not have a vested interest in the property until the sale was confirmed, and we disagree with LaSalle that she was required to attempt to intervene pursuant to Civ.R. 24(C).

**{¶ 86}** LaSalle asserts that even if DiGiorgio could challenge the consent entry, "her arguments are (in substance) akin to those made by the defendant in *Bish Construction*

*Inc. v. Wickham,* 3d Dist. Seneca No. 13-12-16, 2013-Ohio-421." Therein, the Wickhams appealed the denial of their Civ.R. 60(B) motion for relief from a consent judgment and foreclosure decree on their property. *Id.*, ¶ 1. They asserted, pursuant to Civ.R. 60(B)(5), that a fraud had been perpetrated upon the court. *Id.* The Wickhams signed a note in 2004, secured by a mortgage which was granted by Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender, Full Spectrum Lending, Inc. ("Full Spectrum"). *Id.*, ¶ 2. The mortgage was later assigned, on July 18, 2008, to the Bank of New York ("BONY"), and recorded on July 30, 2008. *Id.* On January 31, 2008, Bish Construction, Inc. ("Bish") sought foreclosure of a mechanics lien on the Wickhams' property, and it named Full Spectrum and Mers as defendants. *Id.*, ¶ 3. "On July 30, 2008, BONY filed an amended answer and cross-claim. BONY filed as Trustee for the Certificate holders CWABS, Inc., Asset-Backed Certificates, Series 2004-10 as successor by merger to assignment to MERS. " *Id.*, ¶ 4. BONY argued that the Wickhams were in default since 2007. *Id.* "BONY sought to have the Mortgage foreclosed and the property sold at sheriff's sale." *Id.*, ¶ 4.

{¶ 87} A consent journal entry of judgment was issued regarding Bish's complaint against the Wickhams in September, 2008, Bish was dismissed from the action, and the issues relevant on appeal involved BONY's cross-claim against the Wickhams. *Id.*, ¶ 5. The Wickhams entered into a Consent Judgment with BONY which provided that BONY was entitled to a judgment and decree on its cross-claim, and that "BONY would agree to not execute on the Consent Judgment for sixty days, for the purposes of circulating an updated loan modification agreement, with terms previously negotiated." *Id.*, ¶ 6.

{¶ 88}   The Wickhams subsequently filed for bankruptcy, the trial court accordingly stayed proceedings, and "the Wickhams received a discharge of their obligations, thereby extinguishing their personal liability for any potential deficiency balance." *Id.*, ¶ 7.   BONY filed a motion to reactivate the matter to proceed with execution of its judgment, the court granted the motion, and the property was scheduled to be sold.   *Id.*, ¶ 8.   Before the sale, the Wickhams filed their Civ. R. 60(B) motion along with a motion to dismiss.   *Id*. According to the Wickhams, BONY "perpetrated a fraud upon the court" because it "didn't own the note at the time of the filing of the cross-claim and lacked standing to bring its complaint and obtain a valid judgment."   The trial court denied the Wickhams' Civ.R. 60(B) motion.   *Id.*, ¶ 11.

{¶ 89}   The Third District noted that *Schwartzwald* was decided after oral arguments and determined as follows:

> The Wickhams filed a notice of supplemental authority, claiming that their case should also have been dismissed because there was no assignment of the Mortgage to BONY at the time the complaint was filed against the Wickhams. However, we find that *Schwartzwald* is not applicable to the facts in this case.   Although the original complaint by *Bish Construction* was filed while MERS was still the real party in interest on the Mortgage, BONY's amended answer and cross complaint, filed on July 30, 2008 was filed *after* the assignment of Mortgage was executed on July 18, 2008.   *Wickham, ¶ 22.*

The court noted in a footnote that "even before BONY obtained permission from the court to file its amended cross-claim, the original cross-claim was filed July 21, 2008, also *after* the

execution of the assignment of mortgage." *Id*., fn.1. LaSalle asserts that "the fact that the standing argument [asserted in *Wickham*] did not result in automatic dismissal of the lender's claims is fatal to DiGiorgio's arguments." I disagree with LaSalle's assertion that *Wickham* is fatal to DiGiorgio's argument, since it is clear that the mortgage in *Wickham* was assigned to BONY prior to the filing of its cross-claim against the Wickhams.

{¶ 90} I recognize that on February 14, 2014, LaSalle filed Appellee's Notice of Filing Supplemental Authority, attached to which is *Bailey*. Therein, the court noted that "the Ohio Supreme Court has certified a conflict on the following question: 'When a defendant fails to appeal from a trial court's judgment in a foreclosure action, can a lack of standing be raised as part of a motion for relief from judgment?' *Bank of Am., N.A. v. Kuchta*, 135 Ohio St.3d 1430, 2013-Ohio-1857, 986 N.E.2d 1020." *Id., ¶* 17. I note that oral argument in *Kutcha* occurred on January 8, 2014. I agree with the dissenting view articulated in *Bailey*, concluding that "this court should follow the Ohio Supreme Court's decision" in *Schwartzwald*. *Id*., ¶ 37. The dissenting opinion concluded that, "pursuant to *Schwartzwald*, standing is jurisdictional. As a result, HSBC was required to have an interest in the note or mortgage when it filed this action in order to have standing to invoke the trial court's jurisdiction." *Id*., ¶ 48.

{¶ 91} As this Court recently noted in *Busby*, at ¶ 16, quoting *Kincaid*: "Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim. It is an issue of law, so we review the issue de novo." I am of the view that the decision of the Eleventh District in *Baile*y, upon which LaSalle relies, is in conflict with this Court's decision in *Busby,* in which this Court said,"in the past, the Supreme Court of Ohio held that a '[l]ack of

standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court' * * *, [and that] a standing or real party in interest defense to a foreclosure action was considered waived, if not timely asserted." *Id.*, ¶ 17. This Court further noted, however, citing *Schwartzwald*, that "[r]ecently, in the context of a mortgage foreclosure action, the Ohio Supreme Court held that standing *is* jurisdictional and is determined when a lawsuit is commenced." *Id.*, ¶ 18 (emphasis added). This Court determined that the "supreme court made clear that post-suit events cannot be considered to determine standing, and a lack of standing cannot be 'cured' by use of Civ.R. 17 (real party in interest) or other civil rules." *Id.* This Court concluded, "because standing is a jurisdictional requirement, the complaint must be dismissed if standing is lacking [*Schwartzwald*, ¶ 40]." *Id.*, ¶ 19. Furthermore, "standing concerns the subject matter jurisdiction of the court," and "cannot be waived and may be raised at any time, even after judgment. * * * ." *Id.* "'If a trial court lacks subject matter jurisdiction to render a judgment, the order is void ab initio and may be vacated by the court's inherent power, even without the filing of a Civ.R. 60(B) motion.'" * * * *Id.*, ¶ 19. This Court found that "the documents attached to BAC's complaint were sufficient to establish standing to file its foreclosure action." *Id.*, ¶ 21.

{¶ 92} In my view, it is clear from the record herein that unlike the lender in *Busby*, LaSalle lacked standing to invoke the jurisdiction of the trial court; it filed its complaint against the Browns on July 7, 2008, and the assignment of mortgage and note was executed on September 21, 2008. I would decline to follow the Eleventh District's rationale as set forth in *Bailey*, and I would adhere to our interpretation of *Schwartzwald*[1] as set forth in *Busby*. I would

---

[1] As recently as June 10, 2014, the Ohio Supreme Court cited to

find that the trial court lacked subject matter jurisdiction to render judgment, and that the foreclosure decree is void ab initio.

{¶ 93} Accordingly, I would reverse.

. . . . . . . . . .

Copies mailed to:

Jason A. Whitacre
Ashley E. Mueller
Andrew M. Engel
Hon. Gregory F. Singer

---

*Schwartzwald*, noting "if a common pleas court proceeds in an action in which the plaintiff lacks standing, the court violates Article IV of the Ohio Constitution. Article IV requires justiciability, and justiciability requires standing." *ProgressOhio.org, Inc. v. JobsOhio*, Slip Opinion No. 2014-Ohio-2382, ¶ 11.