[Cite as *Nationstar Mtge., L.L.C. v. West*, 2014-Ohio-735.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

NATIONSTAR MORTGAGE, LLC

      Plaintiff-Appellee

v.

THOMAS M. WEST, et al.

      Defendants-Appellants


Appellate Case Nos. 25813/25837

Trial Court Case No.   2010-CV-7223


(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 28th day of February, 2014.

. . . . . . . . . . .

MICHAEL L. WIERY, Atty. Reg. No. 0068898, RACHEL M. KUHN, Atty. Reg. No. 0090220, P.O. Box 96696, 30455 Solon Road, Solon, Ohio 44139
      Attorneys for Plaintiff-Appellee-Nationstar Mortgage, LLC

THERAN J. SELPH, Atty. Reg. No. 0079376, LINCOLN A. FIELDING, Atty. Reg. No. 0085396, P.O. Box 341318, Columbus, Ohio 43234, DARRYL GORMLEY, Atty. Reg. No. 67595, 2450 Edison Boulevard, P.O. Box 968, Twinsburg, Ohio 44087, MICHAEL L. WIERY, Atty. Reg. No. 0068898, P.O. Box 96696, 30455 Solon Road, Solon, Ohio 44139
      Attorneys for Plaintiff-Appellee-Aurora Loan Services, LLC

DOUGLAS M. TROUT, Atty. Reg. No. 0072027, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Defendant-Appellee-Montgomery County Treasurer

PATRICK DUNPHY, Atty. Reg. No. 17827, 30 Wyoming Street, Dayton, Ohio 45409

Attorney for Defendants-Appellees-Jean West and William West
THOMAS WEST, 4244 Fulton Avenue, Moraine, Ohio 45439
    Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    In this consolidated appeal, Defendant-Appellant, Thomas West, appeals pro se from a judgment entry and decree of foreclosure rendered in favor of Plaintiff-Appellee, Nationstar Mortgage, LLC. (Nationstar).  West contends that the trial court erred in granting Nationstar's motion for summary judgment because genuine issues of material fact exist regarding: (1) whether Nationstar is the equitable party in interest; and (2) whether Nationstar is the holder of the mortgage.  West additionally contends that the trial court lacked jurisdiction over the foreclosure action, and that the court erred in denying West his right to a trial by jury.

{¶ 2}    We conclude that the trial court did not err in rendering judgment in favor of Nationstar.  As a successor in interest, Nationstar had standing to pursue the foreclosure claim, and the trial court had jurisdiction over the action.  The undisputed facts also indicate that West failed to make payments required under the mortgage.  Furthermore, West was not entitled to a trial by jury, because the trial court properly rendered summary judgment on Nationstar's claims.  Accordingly, the judgment of the trial court will be affirmed.

## I.  Facts and Course of Proceedings

{¶ 3}    In December 2002, Thomas West's mother, Anna Marie Bland, signed and notarized a transfer-on-death deed, conveying property she owned at 4244 Fulton Avenue, Moraine, Ohio, to her son, Thomas West.  Bland was the sole owner of the property at the time

of the conveyance. Bland subsequently passed away in October 2003. West did not file the deed with the Montgomery County Recorder until after Bland's death. After Bland's death, West also probated a will that bequeathed the property to him, but he never obtained a certificate of transfer for the property.

{¶ 4} On February 2, 2005, West signed a promissory note agreeing to pay Pinnacle Financial Corporation ("Pinnacle") the sum of $50,000, at an interest rate of 7.5% per year. At the same time, West also signed a mortgage agreement, granting Mortgage Electronic Registration Systems, Inc. ("MERS") a security interest in the property at 4244 Fulton Avenue, solely as nominee for Pinnacle and its successors and assigns.

{¶ 5} The promissory note contained endorsements from Pinnacle to Impac Funding Corporation ("Impac"), and from Impac to Aurora Loan Services, LLC ("Aurora"). In addition, MERS assigned the mortgage to Aurora on September 10, 2010.

{¶ 6} West paid on the note until April 1, 2010, when he defaulted on his payments. Aurora then filed a complaint for foreclosure and request for declaratory judgment against West and Bland's heirs on September 10, 2010. Aurora alleged that it was the holder of the promissory note signed by West, and that West's mortgage had been assigned to it. Aurora further alleged that West owed $47,254.60 plus interest at 7.5% per annum from April 1, 2010. In addition, Aurora asked the trial court to declare West the owner in fee simple of the property located at 4244 Fulton Avenue, based on the mutual mistake of West and Bland in the filing of the transfer on death deed.

{¶ 7} West filed an answer and counterclaim, pro se, in October 2010. West alleged in the counterclaim that Aurora did not have standing to pursue the claim, and had committed civil and criminal fraud. West also demanded a jury trial. In June 2011, the trial court

sustained Aurora's motion to dismiss the counterclaim, based on the counterclaim's failure to set forth operative facts of the alleged fraud. The court additionally denied West's request for a jury trial. West then filed a plethora of pleadings, including an abortive attempt to remove the case to federal court.

{¶ 8} In June 2012, the trial court granted West's motion to file an amended answer and counterclaim. In the amended counterclaim, West alleged that he was incompetent when the original note and mortgage were signed, due to acute mental, drug, and alcohol issues. Subsequently, in August 2012, Aurora filed a motion to substitute Nationstar as plaintiff, based on the fact that the note and mortgage had been assigned to Nationstar on July 20, 2012. The trial court granted the motion to substitute, and then granted Nationstar's motion to dismiss West's counterclaim. In this regard, the court held that a statement that a loan officer took advantage of West's demeanor was insufficient to state a claim under R.C. 1345.02(A) and (F); R.C. 1345.031(13); and R.C. 1322.07(B). The court further concluded that West failed to state a claim for emotional distress, and that West was not entitled to a jury trial.

{¶ 9} In February 2013, Nationstar filed a motion for summary judgment. In conjunction with the motion, Nationstar submitted deposition transcripts of the following individuals: Thomas West; Kevin Cartwright, the notary who signed the closing documents for West's loan; and Steve Maloney, the loan officer who processed the loan. In addition, Nationstar submitted the affidavit of Edward Hyne, who authenticated the promissory note, mortgage, assignments of note and mortgage, and the loan history for West's loan. The affidavit and other documents indicated that West had defaulted on the loan and owed Nationstar $47,254.60, plus interest at 7.5% per annum from April 1, 2010, plus costs, fees, advances to secure the property, and attorney fees. Nationstar also filed a motion for default judgment

against other parties who had not appeared in the action or who had disclaimed any interest in the property.

{¶ 10}    West responded to the motion for summary judgment, contending that there were issues of fact regarding whether the note was illegal from the outset, whether the original assignment of the loan was valid, whether Nationstar had unclean hands, and whether the transfer on death deed was lawful.    However, West failed to attach any evidence in support of his theories.    West also filed a motion to dismiss the case, based on the trial court's alleged lack of jurisdiction.

{¶ 11}    On June 10, 2013, the trial court sustained Nationstar's motion for summary judgment and overruled West's motion to dismiss.    In particular, the court held that Nationstar was a real party in interest and had standing to bring the action.    The court also noted that West failed to submit any evidence, such as an affidavit, to indicate that the note and mortgage were unlawfully obtained due to his intoxication.    On the same day, the court also filed a judgment and decree in foreclosure, and declared that West was the sole fee owner of the property.    The court then filed an amended judgment and decree in foreclosure on June 26, 2013.    West filed notices of appeal from each judgment of foreclosure, and the appeals have been consolidated.

II.    Did the Trial Court Err in Granting Summary Judgment?

{¶ 12}    Two of West's assignments of error relate to the same issue, and will be considered together.    West's First Assignment of Error, raised in his August 7, 2013 brief, states that:

The Trial Court Erred in Granting Plaintiff/Appellee's Motion for Summary Judgment because Plaintiff/Appellee Failed to Demonstrate that It Is

Entitled to Judgment as a Matter of Law; the Unrefuted Civ.R. 56 Evidence Demonstrates, at the Very Least, that a Genuine Issue of Material Fact Exists as to Whether Plaintiff/Appellee is the Equitable Party in Interest.

{¶ 13}   West's Third Assignment of Error,  raised in his September 30, 2013 brief, states that:

The Trial Court Erred in Entering an Amended Judgment and Decree in Foreclosure Where Plaintiff/Appellee Failed to Show that It Was Entitled to Judgment as a Matter of Law; Pursuant to Unrefuted Civ.R. 56 Evidence Submitted in this Case that Established a Genuine Issue of Material Fact as to Whether Plaintiff/Appellee Was [an] Equitable Party in Interest.

{¶ 14}   Under these assignments of error, West argues that Aurora was not the owner or holder of the note and mortgage when the complaint was filed, and that the subsequent substitution of Nationstar as the real party in interest did not cure Aurora's lack of standing at the beginning of the action.   In this regard, West contends that the chain of mortgage assignments is defective, and that Aurora/Nationstar failed to attach sworn or certified copies of the mortgage and numerous mortgage assignments to its motion for summary judgment.

{¶ 15}   The law regarding summary judgments is well-established.  "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.)  *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).   "We review summary judgment decisions de novo, which means that we

apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.)

{¶ 16} "To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due." *Wright–Patt Credit Union, Inc. v. Byington*, 6th Dist. Erie No. E-12-002, 2013-Ohio-3963, ¶ 10, citing *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶ 26. (Other citation omitted.) *Accord JP Morgan Chase Bank, N.A. v. Massey*, 2d Dist. Montgomery No. 25459, 2013-Ohio-5620, ¶ 20.

{¶ 17} In the case before us, Nationstar submitted an affidavit indicating that its records contained a note and mortgage between Pinnacle and West, and that Nationstar was the holder of the note, the assignee of the mortgage, and the servicer of West's loan. We have previously indicated that this is sufficient to show assignment by transfer of possession alone. *Massey* at ¶ 21, citing *PHH Mtge. Corp. v. Unknown Heirs of Cox*, 2d Dist. Montgomery No. 25617, 2013-Ohio-4614, ¶ 7, fn. 1.

{¶ 18} In addition, the affidavit attached to Nationstar's motion identified and authenticated the relevant documents, including the note, mortgage, and assignments of the note and mortgage. The affidavit also indicated that West was in default on the note, and that he had been given notice of the default. Finally, the loan history and amount due were established by the affidavit and supporting documents.

{¶ 19} West failed to offer any evidence in compliance with Civ.R. 56(E) that would

refute Nationstar's evidence. Furthermore, West admitted at his deposition that he had signed the note and mortgage, that he had received the funds from the loan, and that he had defaulted on the payments. *See* Deposition of Thomas West, taken on January 22, 2013, pp. 42, 45-47, 67, 79, 84, and 93-94.

{¶ 20} Accordingly, there were no genuine issues of material fact regarding Nationstar's entitlement to summary judgment, and the trial court did not err in rendering summary judgment in favor of Nationstar on the complaint for foreclosure. West's First Assignment of Error, filed on August 7, 2013, and his Third Assignment of Error, filed on September 30, 2013, are, therefore, overruled.

III. Did the Trial Court Err in Overruling West's Motion to Dismiss

for Lack of Jurisdiction?

{¶ 21} Again, a number of West's assignments of error relate to the same issue, and will be considered together. West's Second Assignment of Error, raised in his August 7, 2013 brief, states that:

The Trial Court Erred in Not Granting Defendant/Appellant's May 16, 2013 Motion to Dismiss for Lack of Jurisdiction with Remedy Demand, Where the Manifest Weight of the Evidence Establishes that the Federal National Mortgage Association, (Fannie Mae), Acquired Ownership of the Note and Mortgage on August 1, 2005, with Both, Plaintiff/Appellee and Plaintiff/Appellee's Counsel Admitting to the Same Fact. (Plaintiff Brief in Opposition filed May 24, 2013, Page 3, C).

{¶ 22} West's First Assignment of Error, raised in his September 30, 2013 brief, states

that:

> The Trial Court Erred in Entering an Amended Judgment and Decree in Foreclosure, and/or Entering any Judgments in the Case, Where the Record Plainly Provides that the Plaintiff Failed to Lawfully or Properly Invoke the Subject Matter Jurisdiction of the Court of Common Pleas for Montgomery County, Ohio, in the First Instant, [sic] as Evident [sic] by the Plaintiff's Complaint.

**{¶ 23}** Finally, West's Fourth Assignment of Error, raised in his September 30, 2013 brief, states that:

> The Trial Court Erred in Entering an Amended Judgment and Decree in Foreclosure Whereby Finding Plaintiff(s)/Appellee[s] Were the Holder of the Instruments, Contrary to the Laws of this State, to wit: R.C. 5301.23(A) Mortgage Effective Dates, R.C. 5301.232(E)(3) "Holder of the Mortgage" and R.C. 1303.32(A). Holder in Due Course.

**{¶ 24}** Under these assignments of error, West contends that Aurora lacked standing to file the foreclosure action because Fannie Mae, rather than Aurora, was the owner of the note and mortgage. West further argues that the subsequent assignment to Nationstar and the substitution of Nationstar as a plaintiff did not remedy the defect.

**{¶ 25}** Generally, we review issues of subject-matter jurisdiction de novo. *See, e.g.*, *Yu v. Zhang*, 175 Ohio App.3d 83, 2008-Ohio-400, 885 N.E.2d 278, ¶ 16 (2d Dist.). In the context of standing and jurisdiction, the Supreme Court of Ohio held in *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, that:

> [S]tanding is required to invoke the jurisdiction of the common pleas

court, and therefore it is determined as of the filing of the complaint. Thus, receiving an assignment of a promissory note and mortgage from the real party in interest subsequent to the filing of an action but prior to the entry of judgment does not cure a lack of standing to file a foreclosure action. *Id.* at ¶ 3.

{¶ 26} However, *Schwartzwald* does not apply to the matter before us, because Aurora had a right to enforce the note and mortgage at the time the foreclosure was filed. Aurora was not required to show that it owned the note.

{¶ 27} Initially, we note that if a note is negotiable under R.C. 1303.03(A), R.C. Chapter 1303 will apply. *Bank of Am., N.A. v. Pasqualone*, 10th Dist. Franklin No. 13AP-87, 2013-Ohio- 5795, ¶ 27-28. "Ohio courts * * * have generally held that a note secured by a mortgage is a negotiable instrument." (Citations omitted.) *Id.* at ¶ 29.

{¶ 28} In *Pasqualone*, the court of appeals applied the criteria in R.C. 1303.03(A) to decide whether the note in question was a negotiable instrument. The court concluded that the note was negotiable, because it contained a promise to pay the lender a set amount, plus interest, provided for monthly payments, and specified the due date for payment in full. *Id.* at ¶ 30. In the case before us, West's note meets the same criteria under R.C. 1303.03(A), and is, therefore, a negotiable instrument subject to R.C. Chapter 1303.

{¶ 29} Where a note is governed by R.C. Chapter 1303, the issue of ownership of the note is not necessarily the critical factor. Under R.C. Chapter 1303, "the question of who has an ownership interest in a note is different from the question of who is entitled to enforce a note. Sometimes the person entitled to enforce the note and the owner of the note are one and the same. Sometimes they are not. Indeed, R.C. 1303.31(B) states that '[a] person may be a "person entitled to enforce" the instrument even though the person is not the owner of the

instrument or is in wrongful possession of the instrument.' Furthermore, a plaintiff is not required to plead that it was the 'owner' of the note and mortgage in its complaint." *Pasqualone* at ¶ 23, citing *U.S. Bank Natl. Assn. v. Mitchell*, 6th Dist. Sandusky No. S-10-043, 2012-Ohio-3732, ¶ 16, and *Bank of New York Mellon Trust Co. v. Fox*, 6th Dist. Ottawa No. OT-11-046, 2012-Ohio-6245, ¶ 15. " 'An assertion of ownership rights does not indicate entitlement to enforce an instrument, nor does a lack of ownership necessarily prevent a person from being entitled to enforce an instrument.' " *Pasqualone* at ¶ 23, quoting *Mitchell* at ¶ 16.

{¶ 30} In *Pasqualone,* the Tenth District Court of Appeals discussed in detail the difference between a debtor's interest in the ownership of a note and a debtor's interest in who has the right to enforce the note. The court explained that if " 'the maker pays someone other than a "person entitled to enforce" – even if that person physically possesses the note the maker signed – the payment generally has *no* effect on the obligations under the note.' " (Emphasis sic.) *Pasqualone*, 10th Dist. Franklin No. 13AP-87, 2013-Ohio- 5795, at ¶ 24, quoting *In re Veal*, 450 B.R. 897, 910 (Bankr.9th Cir.2011). (Other citations omitted.) Thus, "in a promissory note default case, once the court determines that a plaintiff is the person entitled to enforce the note, and judgment is entered against a defendant on that basis, the defendant is generally protected from being subject to subsequent claims for default on the same note to the extent payment is made to the person entitled to enforce the note whether by the proceeds of the mortgage foreclosure sale or otherwise. Therefore, a debtor's concern with who is the person entitled to enforce a note is paramount." *Pasqualone* at ¶ 24.

{¶ 31} In contrast, "the question of *ownership* of a note is not the debtor's concern * * *." (Emphasis sic.) *Id.* at ¶ 25. In this regard, the Tenth District Court of Appeals stressed in *Pasqualone* that:

"This distinction [between an owner of a note and a person entitled to enforce a note] further recognizes that the rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. UCC § 3-602(a), (c) [R.C. 1303.67(A)]. By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay). Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals [as the makers of the note] should not care who actually owns the note – and it is thus irrelevant whether the note has been fractionalized or securitized – so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the 'person entitled to enforce' the note, the Veals should be content."

*Pasqualone* at ¶ 25, quoting *Veal* at 912-13.

**{¶ 32}** As was noted in *Pasqualone*, R.C. 1303.31(B) stresses this concept, by stating that "[a] person may be a 'person entitled to enforce' the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

**{¶ 33}** Accordingly, in the case before us, the fact that Fannie Mae owned the note is not relevant; the relevant issues are whether Aurora had the right to enforce the note when it filed suit, and whether Nationstar subsequently obtained the right to enforce the note.

Unquestionably, both entities had the right to enforce the note at the appropriate times.

**{¶ 34}** R.C. 1303.31 (A) provides that a "[p]erson entitled to enforce" an instrument includes:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder;

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code.

**{¶ 35}** R.C. 1301.201(A)(21)(a) defines a "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession * * *."

**{¶ 36}** When suit was filed, Aurora was in possession of a negotiable instrument that was originally made payable to Pinnacle. However, Pinnacle assigned the note to Impac, which in turn assigned the note to Aurora before suit was filed. Aurora, therefore, was a person entitled to enforce the note. Nationstar subsequently became a holder of the note, because it was in possession of the note, which had been assigned to it by Aurora on July 20, 2012. Accordingly, Aurora had standing to bring the action, giving rise to the trial court's jurisdiction, and Nationstar was the proper party to maintain the action once the note had been assigned to it by Aurora.

**{¶ 37}** West has also challenged the chain of assignment of the mortgage. However, in this regard, we have previously held that formal assignment is not required, because a "mortgage automatically follows the note it secures." (Citations omitted.) *PHH Mtge. Corp.,* 2d Dist.

Montgomery No. 25617, 2013-Ohio-4614, at ¶ 7. Thus, "the transfer of a note automatically results in equitable assignment of a mortgage securing the note." (Citation omitted.) *Id.*

{¶ 38} Accordingly, the trial court did not err in concluding that it had jurisdiction over the action. West's Second Assignment of Error, filed on August 7, 2013, and his First and Fourth Assignments of Error, filed on September 30, 2013, are, therefore, overruled.

## IV. Did the Trial Court Err in Rejecting West's Jury Demand?

{¶ 39} West's Second Assignment of Error, raised in his September 30, 2013 brief, states as follows;

The Trial Court Erred in Entering an Amended Judgment and Decree in Foreclosure, Where the Record Provides that the Defendant/Appellant Was Denied His Demanded Right to a Trial by Jury on the Plaintiff's Demand for Personal Judgment against Defendant/Appellant.

{¶ 40} Under this assignment of error, West contends that the trial court erred in refusing to allow him to have this matter tried to a jury. When the trial court dismissed West's amended counterclaim, the court also stated that West was not entitled to a jury trial with respect to the foreclosure claim.

{¶ 41} We noted in *Gem City Savings Assn. v. Morrow*, 2d Dist. Montgomery No. 7501, 1982 WL 3716 (Apr. 14, 1982), that "[t]he law of Ohio has long been established that a real estate foreclosure is an equitable action and not subject to a trial by jury." *Id.* at *1, citing *Natl. Bank v. Wheelock*, 52 Ohio St. 534, 40 N.E. 636 (1895), and *Carr v. Loan Corp.,* 148 Ohio St. 533, 76 N.E.2d 389 (1947). *Accord Rokakis v. W. Res. Leasing Co.*, 8th Dist. Cuyahoga No.

95058, 2011-Ohio-1926, ¶ 8.

{¶ 42} Nonetheless, "[a]n exception to the general rule that a party is not entitled to a jury trial in foreclosure actions applies when there is a claim for a personal judgment against a party." *Rokakis* at ¶ 9, citing *Sec. Fed. Sav. & Loan of Iowa v. King,* 8th Dist. Cuyahoga Nos. 44864 and 45071, 1983 WL 4645 (Aug. 25, 1983), and *Grapes v. Barbour*, 58 Ohio St. 669, 675, 49 N.E. 306 (1898). Because the complaint in the case before us requested a judgment against West for $47,254.60, West would have been entitled to a jury trial with regard to the money judgment. Despite this fact, a jury trial was not warranted because the trial court correctly granted summary judgment to Nationstar. *Bank of New York Mellon v. Ackerman*, 2d Dist. Montgomery No. 24390, 2012-Ohio-956, ¶ 21.

{¶ 43} In this vein, beyond concluding that summary judgment was warranted on West's default, the trial court also rejected West's argument that the note and mortgage were unlawfully obtained due to his state of intoxication. West has not assigned a specific assignment of error in connection with this point, but he does contend in his brief that the original loan was procured fraudulently because he was of unsound mind when he signed the mortgage and note, due to his negative physical and mental demeanor.

{¶ 44} After considering this point, the trial court concluded that West had failed to set forth specific facts creating a genuine issue of material fact concerning his contention. We agree with the trial court.

{¶ 45} R.C. 1303.35(A) contains certain defenses to enforcement of notes. As pertinent here, the statute provides that:

> Except as stated in division (B) of this section, the right to enforce the
> obligation of a party to pay an instrument is subject to all of the following:

(1) A defense of the obligor based on any of the following:

* * *

(b) Duress, lack of legal capacity, or illegality of the transaction

that, under other law, nullifies the obligation of the obligor * * *.

**{¶ 46}** As the movant for summary judgment, Nationstar did not have " 'the burden to prove its case *and disprove* the opposing party's case as well.' " (Emphasis sic.) *Wells Fargo Minnesota, N.A. v. Finley*, 2d Dist. Greene No. 2007-CA-09, 2008-Ohio-982, ¶ 12, quoting *Todd Development Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 13. Thus, Nationstar was not required to disprove West's alleged defense.

**{¶ 47}** Notably, West did not dispute that he had signed the promissory note and mortgage agreement, nor did he dispute that he had received the loan proceeds. Furthermore, although West claimed to have been intoxicated on a daily basis at the time he entered into the loan, he failed to present any evidence as required by Civ.R. 56(E) to substantiate his claims. In this regard, Civ.R.56(E) provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**{¶ 48}** West failed to present such evidence. In fact, contrary to West's allegations in his pleadings that he was intoxicated on a daily basis, records identified at West's deposition indicate that West told others that he was drinking only two to three beers per week around the

time he signed the note and mortgage. *See* West Deposition, Ex. P. The other evidence presented also indicated that nothing out of the ordinary was perceived by the individuals who processed the loan and conducted the closing. *See* Depositions of Steve Maloney and Kevin Cartwright, filed on February 22, 2013.

{¶ 49} Based on the preceding discussion, West's Second Assignment of Error, raised in his September 30, 2013 brief, is without merit and is overruled.


## V. Conclusion

{¶ 50} All of West's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


HALL, J., concurs.
DONOVAN, J., concurs in judgment only.


Copies mailed to:

Michael L. Wiery
Rachel M. Kuhn
Theran J. Selph
Lincoln A. Fielding
Darryl Gormley
Douglas M. Trout
Patrick Dunphy
Thomas West
Hon. Michael W. Krumholtz