[Cite as *Huntington Natl. Bank v. Thompson*, 2014-Ohio-5168.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

THE HUNTINGTON NATIONAL BANK          :

     Plaintiff-Appellee          :          C.A. CASE NO.    26265

v.          :          T.C. NO.    13CV835

VIVIAN L. THOMPSON, et al.          :          (Civil appeal from
                                              Common Pleas Court)

     Defendant-Appellant          :

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____21st____ day of ____November____, 2014.

. . . . . . . . . .

MIKE L. WIERY, Atty. Reg. No. 0068898 and RACHEL M. KUHN, Atty. Reg. No. 0090220, 30455 Solon Rd., Solon, Ohio 44139
     Attorneys for Plaintiff-Appellee

VIVIAN L. THOMPSON, 180 N. Ardmore, Dayton, Ohio 45417
     Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

     **{¶ 1}**  Vivian L. Thompson appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to The Huntington

National Bank on its claims for a monetary judgment on a note and a decree of foreclosure regarding rental property that Thompson owned. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} In November 2003, Thompson borrowed $134,000 from The Huntington National Bank to purchase the property located at 140 Lexington Avenue in Dayton, Ohio. She signed an adjustable rate note, which identified Huntington as the lender, and an accompanying mortgage. In March 2010, Thompson and Huntington entered into a loan modification agreement.

{¶ 3} On February 8, 2013, Huntington filed a foreclosure action against Thompson, seeking a monetary judgment on the note, foreclosure of the mortgage, and the sale of the property. Huntington alleged that Thompson had defaulted on the note, the loan modification agreement, and the mortgage as of July 1, 2012, and that there remained due and owing $118,443.73, plus interest. The bank attached to the complaint a copy of the adjustable rate note, the loan modification agreement, and the mortgage.

{¶ 4} On January 31, 2014, Huntington moved for summary judgment against Thompson. In support of its motion, Huntington submitted the affidavit of Marvin DeLong, a litigation specialist with Huntington, who authenticated various documents related to Thompson's loan and mortgage. The documents provided evidence of the loan and mortgage, of Thompson's default, of Huntington's compliance with conditions precedent to bringing its foreclosure action, and of the amount owed. Huntington further relied on the request for admissions that it sent to Thompson; the bank argued that, because Thompson

failed to respond to the request for admissions, those matters should be deemed admitted, pursuant to Civ.R. 36(A)(1).

{¶ 5} In March 2014, Thompson filed several documents to oppose the summary judgment motion. She claimed that the trial court lacked jurisdiction, that Huntington was not the real party in interest, and that there was no evidence of default or the sending of a letter of default. Thompson further claimed that DeLong's affidavit was hearsay and implicitly moved for the affidavit to be stricken. She further argued that the trial court should not deem that she had admitted the statements in Huntington's request for admissions. Finally, she stated that Huntington could not bring its action because it had not registered its fictitious name with the State of Ohio. Thompson reiterated her assertions in an affidavit.

{¶ 6} On April 10, 2014, the magistrate issued a decision granting Huntington's motion for summary judgment and denying Thompson's request to strike DeLong's affidavit. Thompson objected to the magistrate's ruling. On May 13, 2014, the trial court overruled her objections and adopted the magistrate's decision. On May 28, 2014, the trial court granted Huntington judgment on the note in the amout of $118,443.73, plus interest, foreclosed the equity of redemption, and ordered the property sold.

{¶ 7} Thompson appeals from the trial court's judgment, raising seven assignments of error.

## II. Jurisdiction of Common Pleas Court and the Bank's Ability to Sue

{¶ 8} Thompson's first assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio

because the Montgomery County, Common Pleas Court of Ohio is a foreign corporation pursuant to 1703.01(C), Appellee is a foreign corporation pursuant to 1703.01(A)(B) and the process is a foreign corporation pursuant to 1703.01(E) and none of the foreign corporations above got consent from the Department of State, United States District Court or the Appellant to give the court jurisdiction.

{¶ 9}   In her first assignment of error, Thompson claims that the trial court lacked subject matter jurisdiction and that Huntington failed to get permission from the federal government to bring its foreclosure action in the trial court.   Thompson cites R.C. 1703.01, which defines the terms "domestic corporation," "foreign corporation," "state," "articles," and "process" for purposes of Ohio's foreign corporation statutes, R.C. Chapter 1703.   She also references 28 U.S.C. 1330, which concerns the jurisdiction of federal district courts regarding actions against foreign states.

{¶ 10}   The Supreme Court of Ohio recently addressed whether courts of common pleas have subject matter jurisdiction over foreclosure actions.   *Bank of Am., N.A. v. Kuchta*, _____ Ohio St.3d _____, 2014-Ohio-4275, _____ N.E.3d _____.   It stated:

> Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases.   A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.   A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction.   This latter jurisdictional category involves

consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void.

Although courts created by statute, such as municipal courts, are a different matter, this case involves a constitutionally created common pleas court. Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters * * * as may be provided by law." Article IV, Section 4(B), Ohio Constitution. Jurisdiction has been "provided by law" in R.C. 2305.01, which states that courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." This court has long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to "all matters at law and in equity that are not denied to it." We have also long held that actions in foreclosure are within the subject-matter jurisdiction of a court of common pleas. * * *

(Citations omitted.) *Kuchta* at ¶ 19-20. The supreme court has thus made clear that courts of common pleas, including the Montgomery County Court of Common Pleas, have subject matter jurisdiction over foreclosure actions, such as the case before us. Title 28 of the United States Code, which addresses the federal judiciary, has no relevance.

{¶ 11} In addition, R.C. Chapter 1703 does not preclude an action by Huntington in the Montgomery County Court of Common Pleas. R.C. 1703.03 requires foreign corporations to obtain a license from the Ohio Secretary of State in order to transact business

in Ohio.  Under R.C. 1703.29, "no foreign corporation that should have obtained such license shall maintain any action in any court until it has obtained such license."

{¶ 12}  Here, the mortgage identifies Huntington's address as located in Columbus, Ohio.  Thus, the record suggests that Huntington is a domestic corporation, not a foreign corporation.  Thompson does not provide evidence that Huntington is a foreign corporation.

{¶ 13}  Even accepting, for sake of argument, that Huntington is a foreign corporation,  "R.C. 1703.031(A) exempts a federally chartered bank, savings bank or savings and loan from the licensing requirement of R.C. 1703.01 to R.C. 1703.31." *Citibank v. Eckmeyer*, 11th Dist. Portage No. 2008-P-69, 2009-Ohio-2435, ¶ 27.  "Business activities of national banks are controlled by the National Bank Act (NBA or Act), 12 U.S.C. § 1 et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC)." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007).  The mortgage indicates that Huntington is a national banking association organized and existing under the laws of the United States.  Thus, any restrictions in R.C. Chapter 1703 on Huntington's ability to bring suit in Ohio would be preempted by federal law, and R.C. 1703.29 would not apply.  *Eckmeyer* at ¶ 24-39; *MidFirst Bank v. Speigelberg*, 8th Dist. Cuyahoga No. 98765, 2013-Ohio-587, ¶ 6.

{¶ 14}  Thompson's first assignment of error is overruled.

### III.  Right to Jury Trial in Civil Action

{¶ 15}  Thompson's second assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio

because  because  [sic]  the  summary  judgment  violates  her  Seven[th]

Amendment rights and the court only had jurisdiction for $15,000 or more.

{¶ 16} In this assignment of error, Thompson cites to the monetary limits set forth in the Seventh Amendment to the United States Constitution and R.C. 1907.03 and 2305.01 to claim that the trial court lacked jurisdiction to enter summary judgment against her.

{¶ 17} R.C. 2305.01 provides that, except as stated in R.C. 2305.03, "the court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts * * *." "[C]ounty courts have exclusive original jurisdiction in civil actions for the recovery of sums not exceeding five hundred dollars and original jurisdiction in civil actions for the recovery of sums not exceeding fifteen thousand dollars." R.C. 1907.03. Thompson correctly states that this action falls within the monetary jurisdiction of the common pleas court.

{¶ 18} The Seventh Amendment creates the right to a jury trial in civil matters. It states that, "where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * *." Reading the Seventh Amendment and the jurisdictional statutes together, Thompson asserts that summary judgment cannot be granted by a court of common pleas if the amount in controversy exceeds $20.

{¶ 19} The Seventh Amendment does not apply to state courts. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). But parties do have a constitutional right to a jury trial in civil matters under the Ohio Constitution. *See* Ohio Constitution, Article I, Section 5 ("[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.").

{¶ 20} However, a trial court does not violate the Ohio Constitution by granting summary judgment when no material issues of fact exist for a jury to decide. It is well-established that "[s]ummary judgment pursuant to Civ.R. 56 is another method available to a party seeking to avoid a trial and is used when the facts of a case are allegedly undisputed." *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 13.

{¶ 21} Huntington's claims fell within the monetary jurisdiction of the common pleas court, and the trial court found that no genuine issues of material fact exist and that Huntington was entitled to judgment as a matter of law. Accordingly, the trial court's grant of summary judgment was not void ab initio under the Ohio Constitution, the Seventh Amendment to the United States Constitution, or Ohio's statutes establishing the monetary jurisdiction of the state courts.

{¶ 22} Thompson's second assignment of error is overruled.

## IV. Standing

{¶ 23} Thompson's third assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio because Appellee lacked standing and the court lacked jurisdiction.

{¶ 24} Thompson asserts that Huntington lacked standing to bring its foreclosure action, because it was not the "owner" of the note and mortgage at the time it commenced its action. Thompson relies on a printout of a "Fannie Mae Loan Lookup" (Doc. #106, Thompson's Ex. B), dated September 7, 2013, which shows that Fannie Mae acquired Thompson's loan on March 1, 2004. The printout identified Thompson's mortgage company as The Huntington National Bank.

**{¶ 25}** Initially, we reject Thompson's suggestion that lack of standing by Huntington would affect the jurisdiction of the trial court. Addressing a post-judgment challenge to a foreclosure judgment, the Supreme Court of Ohio explained that standing involves a "party's ability to invoke the jurisdiction of a court" in a particular case, and it does not affect the subject matter jurisdiction of the court. *Kuchta*, _____ Ohio St.3d __, 2014-Ohio-4275, _____ N.E.3d _____, at ¶ 22. The Court stated, "Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action, and any judgment on the merits would be subject to reversal on appeal. But a particular party's standing, or lack thereof, does not affect the subject-matter jurisdiction of the court in which the party is attempting to obtain relief." *Id.* at ¶ 23. Accordingly, regardless of whether Huntington had standing, the trial court had jurisdiction over the action before us.

**{¶ 26}** In order for Huntington to have standing to bring its foreclosure action, Huntington must have had an interest in the note or mortgage at the time it filed suit. *Bank of Am., N.A. v. Thompson*, 2d Dist. Montgomery No. 25952, 2014-Ohio-2300, ¶ 7, citing *Federal Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 28. This court has held, however, that a party is not required to show that it *owned* a note at the time a foreclosure action is filed, where the party has a right to enforce the note and mortgage. *LaSalle Bank Natl. Assn. v. Brown*, 2014-Ohio-3261, 17 N.E.3d 81, ¶ 34 (2d Dist.); *Nationstar Mtge., L.L.C. v. West*, 2d Dist. Montgomery Nos. 25813, 25837, 2014-Ohio-735, ¶ 26.

**{¶ 27}** R.C. 1303.31(A) identifies three classes of persons who are "entitled to enforce" an instrument, such as a note: (1) the holder of the instrument, (2) a nonholder in

possession of the instrument who has the rights of a holder, and (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or R.C. 1303.58(D). The term "holder" includes a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." R.C. 1301.201(B)(21)(a).

{¶ 28} Huntington supported its summary judgment motion with copies of Thompson's note, mortgage, and loan modification agreement. The note is made payable to Huntington. In March 2010, Thompson and Huntington entered into a loan modification agreement, which altered the payment terms of the note. In his affidavit, DeLong stated that Huntington "has possession of the Note and had such possession of the Note prior to filing the Complaint in this action." The mortgage provides that the mortgagee was Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for the lender, Huntington. On February 1, 2013, one week before the complaint was filed in this case, MERS assigned the mortgage to Huntington.

{¶ 29} Huntington's evidence established that it was in possession of the note prior to filing this action and continues to have possession of the note, and that the note was payable to Huntington. Accordingly, Huntington presented evidence that it is the holder of the note and that, under R.C. 1301.31(A), it is entitled to enforce the note. In addition, the assignment of the mortgage from MERS to Huntington provided another basis to demonstrate that Huntington had standing in the foreclosure action. *Bank of New York Mellon v. Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975, ¶ 28. Thompson's printout showing that Fannie Mae is the owner of the note does not create a genuine issue of

material fact as to Huntington's standing.

{¶ 30}   Thompson's third assignment of error is overruled.

### V.   Fifth Amendment and Civ.R. 36 Request for Admissions

{¶ 31}   Thompson's fourth assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio because the court abused its discretion by allowing admission in violation of Appellant's Fourth and Fifth Amendment rights.

{¶ 32}   Thompson's fourth assignment of error claims that the trial court erred in deeming Huntington's request for admissions to be admitted by Thompson, because she has a right to remain silent under the Fifth Amendment to the United States Constitution and the court's actions in deeming those statements admitted denied her equal protection. Thompson suggests that this foreclosure action should be considered a criminal case for purposes of the Fifth Amendment because it involves a proceeding to forfeit her property.

{¶ 33}   The Eighth District has summarized the scope of the right against self-incrimination under the federal and Ohio constitutions.

By its own terms, the Self-Incrimination Clause of the Fifth Amendment to the United States Constitution, as held applicable to the states, applies only to criminal cases: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *."  Section 10, Article I, Ohio Constitution is similarly applicable only in criminal proceedings: "No person shall be compelled, in any criminal case, to be a witness against himself."  The rule applies in civil proceedings to the extent that compelled

testimony "may tend to incriminate" the witness in a future criminal proceeding. *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (10th Dist.1988). In this context, "incrimination" means not only evidence that would directly support a criminal conviction, *Cincinnati v. Bawtenheimer*, 63 Ohio St.3d 260, 264, 586 N.E.2d 1065 (1992), but "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

*In re M.B.*, 8th Dist. Cuyahoga Nos. 101094, 101095, 101096, 2014-Ohio-4837, ¶ 9.

**{¶ 34}** A mortgage foreclosure action is a civil proceeding, and there is no indication in the record that Huntington's request for admissions would subject Thompson to criminal prosecution or could lead to a criminal prosecution against her. Thompson's claim that she could invoke the Fifth Amendment to avoid responding to Huntington's request for admissions is unsupported by the record.

**{¶ 35}** Requests for admissions are governed by Civ.R. 36, which provides that "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Civ.R. 26(B) set forth in the request, that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. * * *" Civ.R. 36(A). Under Civ.R. 36(A)(1), a request for admission is deemed admitted, unless the party to whom the request was directed "serves upon the party requesting the admission a written

answer or objection addressed to the matter, signed by the party or by the party's attorney."

**{¶ 36}** Any matter admitted under Civ.R. 36(A) is "conclusively established," unless the court on motion permits withdrawal or amendment of the admission. Civ.R. 36(B). "The word 'conclusively' establishes that evidence may not be used to contradict an admission made pursuant to Civ.R. 36." *Crespo v. Harvey*, 2014-Ohio-1755, 11 N.E.3d 1206, ¶ 7 (2d Dist).

**{¶ 37}** On November 1, 2013, Huntington certified that it sent hard and electronic copies of its first set of request for admissions, interrogatories and request for production of documents to Thompson. Upon Thompson's motion, the trial court granted Thompson until December 20, 2013 to respond to Huntington's discovery requests. On January 3, 2014, Huntington sent a letter to Thompson indicating that it had not received any response and requesting responses within seven days. In its January 31, 2014, summary judgment motion, Huntington indicated that Thompson had not responded to its request for admissions, and it asked the court to consider the requested matters admitted when ruling on the summary judgment motion.

**{¶ 38}** Thompson neither argued nor provided evidence that she responded to Huntington's discovery requests. She did not explain to the trial court why she failed to respond to the request for admissions, and she did not seek to have the admissions withdrawn or amended under Civ.R. 36(B). Under the circumstances before us, we cannot conclude that the trial court abused its discretion in deeming Huntington's request for admissions to be admitted under Civ.R. 36(A).

**{¶ 39}** Thompson's fourth assignment of error is overruled.

## VI. Summary Judgment on Huntington's Claims

{¶ 40}   Thompson's fifth assignment of error states:

The Trial Court erred to the prejudice of the appellant and abused its discretion by granting appellee's motion for summary judgment where, there are clearly genuine issues of material facts and the appellee is not entitled to judgment as a matter of law.

{¶ 41}   In her fifth assignment of error, Thompson claims that the trial court erred in granting summary judgment to Huntington on its claims.   Thompson asserts that Huntington failed to (1) send a notice of default before filing its action, (2) have a face-to-face meeting with her, and (3) follow appropriate accounting principles in maintaining her account.

{¶ 42}   Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party.   *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).   The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.   *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).   Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action."   *Id.* at 293; Civ.R.

56(C).

{¶ 43}    Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E).    Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.*    Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 44}    We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42.    "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial."    *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980).    Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.).

{¶ 45}    According to the documents attached to DeLong's affidavit, Thompson borrowed $134,000 from Huntington to purchase the property located at 140 Lexington Avenue.    Thompson signed a note for that amount, payable to Huntington, and secured the debt with a mortgage.    The note was subsequently modified through a loan modification agreement.    Huntington provided a detailed account history, itemizing Thompson's payments on the loan; the account history reflected that the last payment, processed on

September 25, 2012, was for the July 2012 payment and left a balance due of $118,443.73. DeLong stated that, prior to initiating foreclosure proceedings, Huntington sent a Notice of Intention to Accelerate and Foreclose to Thompson; that notice was attached as Exhibit A-6.

{¶ 46} Many of the statements in Huntington's request for admissions asked Thompson to admit that she signed the note, mortgage, and loan modification agreement at issue and that the documents accurately reflected the terms of the loan. By failing to respond to the request for admissions, it was deemed that Thompson admitted to those matters. In addition, she was deemed to have admitted that she last paid the note/loan modification on July 1, 2012, that she breached the note, loan modification agreement, and mortgage by nonpayment, that she owes $118,443.73 plus interest, that she received the notice of default and written notification that her payments were past due, that Huntington "duly performed all of its duties under the Note, Loan Modification Agreement and Mortgage," that she failed to make payments to bring her loan current, and that she failed to mitigate her losses.

{¶ 47} Construing the evidence in Thompson's favor, Huntington's evidence (with or without Thompson's admissions) established that Thompson had defaulted on the note in the amount $118,443.73, plus interest, and that Huntington was entitled to judgment on the note and a decree of foreclosure.

{¶ 48} Thompson asserts that there is a genuine issue of material fact as to whether Huntington provided evidence that a letter of default was sent to her, providing her an opportunity to cure the default. The November 20, 2012 Notice of Intention to Accelerate and Foreclose informed Thompson that she had "defaulted on your mortgage loan by failing

to make one or more monthly payments when due as required by the terms of your mortgage loan." It provided her the "right to correct this default" and notified her that she could cure the default by paying $4,363.95 by December 25, 2012. The note asked Thompson to "please act now so that we can avoid taking further action" and indicated that Huntington may accelerate the mortgage and initiate foreclosure proceedings if no payment were received. A certified mail receipt indicates that Thompson received the notice. Thompson has provided no evidence to contradict Huntington's evidence. We find no genuine issue of material fact as to whether Huntington sent Thompson a notice of default.

{¶ 49} Thompson next argues that Huntington never attempted to have a face-to-face meeting with her and did not comply with federal servicing requirements. With some exceptions, 24 C.F.R. 203.604(b) requires an FHA lender to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. In addition, 24 C.F.R. 203.606 requires the mortgagee to ensure, before initiating foreclosure, that all regulatory servicing requirements have been met.

{¶ 50} Thompson has not provided evidence that she has an FHA loan with Huntington or that these federal regulations have been incorporated into the note and mortgage at issue. Accordingly, Thompson's citation to federal regulations does not create a genuine issue of material fact as to whether Huntington properly filed its action.

{¶ 51} Finally, Thompson asserts that Huntington's bookkeeping entries do not demonstrate that Huntington has strictly complied with its contractual obligations. Huntington's evidence established that Thompson's last payment on the loan was for July

2012, and that she has a remaining balance of $118,443.73, plus interest. Thompson has presented no evidence to contradict or raise any questions regarding Huntington's accounting.

**{¶ 52}** Accordingly, we find no genuine issue of material facts as to whether Thompson defaulted on the note and mortgage and whether Huntington satisfied prerequisites for initiating this foreclosure action. The trial court did not err in granting summary judgment to Huntington on its claims. Thompson's fifth assignment of error is overruled.

### VII.  Electronic Signature

**{¶ 53}** Thompson's sixth assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio because all the orders were sign[ed] electronically which is a violation of law.

**{¶ 54}** In her sixth assignment of error, Thompson asserts that the trial court was not permitted to sign and file its orders and judgment electronically. Thompson cites to R.C. 1306.22 and federal law.

**{¶ 55}** R.C. Chapter 1306 is Ohio's Uniform Electronic Transactions Act. R.C. 1306.22 specifically provides that nothing in the Act shall be construed to "require" courts in Ohio "to use or permit the use of electronic records and electronic signatures." R.C. 1306.22(A). It further provides that courts "may adopt rules pertaining to the use of electronic records and electronic signatures." R.C. 1306.23(B).

**{¶ 56}** The Montgomery County Court of Common Pleas, General Division, has adopted rules regarding electronic filing of documents. Local Rule 1.15 states that,

"[e]xcept as otherwise provided * * *, all civil and criminal cases, including all pleadings, motions, briefs, memoranda of law, deposition transcripts, transcripts of proceedings, orders or other documents, shall be filed electronically through the Court's authorized electronic filing system ('eFile system'). * * *"  This rule includes a requirement that the court eFile all court initiated filings.  Local Rule 1.15(B).

{¶ 57}  Local Rule 1.15(F)(4)(e) addresses signatures of a judge or judicial officer. It states that "eFiled documents may be signed by a Judge or judicial officer via a digitized image of his or her signature combined with a digital signature.  All orders, decrees, judgments and other documents signed in this manner shall have the same force and effect as if the Judge had affixed his or her signature to a paper copy of the order and journalized it."

{¶ 58}  The trial court's signing and filing of documents electronically in this case was authorized by Local Rule and was not improper.  Thompson's sixth assignment of error is overruled.

## VIII.   Thompson's Substantial Rights

{¶ 59}  Thompson's seventh assignment of error states:

The Trial Court erred in entering a Summary Judgment that is void ab initio

because the Court violated the Appellant's "Substantial rights."

{¶ 60}  In her seventh assignment of error, Thompson asserts that the trial court violated her substantial rights by entering orders without jurisdiction and proper parties. She states that the court violated her substantial rights in eight ways:

(1) illegal electronic signed orders by the Courts; (2) refusal of Appellant's

common law right to receive the contract; (3) refusal of the court to have the

Appellee produce documents to show a injured party; (4) refuse to allow Appellant to present oral argument; (5) refusal of court to allow a time [where] Appellant could present witnesses in her case; (6) Appellee is a foreign corporation pursuant to ORC 1703.01(A)(B) and must inform the Department of State of any suit and the Department of [S]tate must inform Appellant pursuant [to] Title 22 CFR 93.1-93.2 and Appellant must consent to the court's jurisdiction which in above case has not happen[ed]; (7) Title 28 USC 1602-1611 allows the jurisdiction of this court to be challenged, and demand of proper jurisdiction to be stated. In the above case jurisdiction has been challenged and proper jurisdiction has not been stated or addressed and; (8) Common Pleas Court in Ohio have jurisdiction on cases fifteen thousand dollars ($15,000) or more so summary [judgment] violates Appellant's Seventh Amendment right or the court didn't have jurisdiction because the Seventh Amendment only allows summary judgment for twenty dollars ($20) or less and Common Pleas Courts don't have jurisdiction over twenty dollars ($20) or less cases.

{¶ 61} In addressing Thompson's other assignments of error, we have already addressed and rejected most of her claims. The only new matter that she raises here is that the trial court refused to allow her to present oral argument and present witnesses. Thompson had asked for an oral hearing regarding Huntington's motion for summary judgment, but the trial court was not required to grant her request. Her substantial rights were not violated by the trial court's denial of her request for an oral hearing. And, because

the trial court properly concluded that no genuine issues of material fact existed and that summary judgment was appropriate, the trial court did not violate her substantial rights by granting summary judgment, thereby precluding Thompson from presenting witnesses at a trial.

{¶ 62}  Thompson's seventh assignment of error is overruled.

## IX.  Conclusion

{¶ 63}  The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Mike L. Wiery
Rachel M. Kuhn
Vivian L. Thompson
Yale Levy
Douglas Trout
Christine Kurilic
Hon. Dennis J. Langer